## Keyser v. Damron, et al.

(Decided June 9, 1914.)

## Appeal from Boyd Circuit Court.

1. Intoxicating Liquors—Action for Damages for Sale of Liquor to Inebriate—Insufficiency of Notice—Evidence.—In an action under 1307, Kentucky Statutes, by a wife against a saloon keeper for damages for a sale of liquor to her inebriate husband, it was province of jury to pass on question of fact whether notice was given forbidding sale.

2. Intoxicating Liquors—Sale of to Inebriate—Requisites of Recovery.—Statute makes three requisites for recovery in action for sale of liquor to inebriate: (1) That there was a selling or furnishing of the liquor; (2) That the person getting the liquor was an inebriate or habitual drunkard; (3) That it was sold or furnished in violation of a notice forbidding it.

3. Intoxicating Liquors—Sale of to Inebriate—Recovery.—In an action for damages for the sale of liquor to an inebriate there can be no recovery resulting from any sales not made or countenanced by the keeper of the saloon, or those in his employ.

4. Intoxicating Liquors—Sale of to Inebriate—Notice.—In an action for damages for the sale of liquor to an inebriate, the chief requisite of the action is the notice; if the sale is made in violation of the notice, it may be deemed a wilful or malicious violation of it. For this reason, and by express provision of the Statute, a punitive damage instruction is authorized.

JOHN S. FULLERTON, JOHN W. WOODS for appellant.

L. T. EVERETT, JOHN F. COLDIRON for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This is an action by Mrs. Lizzie Keyser to recover $2,000 damages of Wayne Damron, a licensed saloon keeper, for selling liquor to her inebriate husband, notwithstanding a notice theretofore served upon him not to do so. The action is brought under section 1307, Kentucky Statutes, which reads as follows:

"Any person who shall sell, lend, give, procure for, or furnish spirituous, vinous or malt liquors, or any mixture of either, knowingly, to any person who is an inebriate or in the habit of becoming intoxicated or drunk by the use of any such liquors, or who shall suffer or permit any such person to drink any such liquors in his barroom, saloon, or upon the premises under his control, or in his possession, shall be fined for each offense fifty dollars, and the person so offending, together with the

sureties on his bond, if he has executed a bond to enable him to sell liquor, shall be liable to a civil action for damages by the wife, or the father, or the mother, or the child of such inebriate, or person so in the habit of becoming intoxicated or drunk, in which punitive damages may be assessed; but the person so selling shall not be liable in a civil action to the wife, father, or other relation, unless written notice forbidding such sale has been given the person so selling prior to the offense complained of, and such action shall be brought within one year from the time the cause of action accrued, and not after.''

The sale was made during the year 1909, and within twelve months just preceding the institution of the action. The main issue in the case is whether notice was, in fact, served on Damron; and this question being submitted to the jury, they returned a verdict against Mrs. Keyser, and she appeals.

At that time Mrs. Keyser testified she was 33 years of age, and had been married to Charles Keyser ever since she was fifteen years old. During the 18 years of their married life eight children had been born to them. For fifteen years her husband had been a confirmed drunkard; a source of constant sorrow and anxiety to her. He had wasted his estate, and lost his power to earn money. Her loyalty to her husband under these circumstances, her solicitude for the children, and the goodness of her character at once arouses the sympathy of any one who is called to give the case consideration, and we are constrained to believe that the jury would have given her some relief in damages had they felt that the facts proven with reference to the notice came within the statutory requirements. The jury evidently believed that there was not satisfactory or sufficient proof that Wayne Damron, the proprietor of the saloon, had ever been notified not to sell, or give liquor to her husband, for they returned a verdict in his favor. That the notice must be given to the proprietor is conceded. Eilke v. McGrath, 100 Ky., 537.

Both appellant and appellee criticise the instructions given by the court, and we will notice these objections later, but as to whether the judgment entered on this verdict shall be sustained, it is a simple question of fact.

It seems in 1907 there were 15 saloons in Catlettsburg. Mrs. Keyser secured the services of an attorney, and prepared notices in sufficient number for delivery to each one of these saloon keepers, and one day in November of

that year, she went to each one of these saloons, and delivered, or attempted to deliver a paper to each proprietor, notifying him that her husband was an inebriate, and not to sell, give or furnish him any spirituous, vinous or malt liquors. She says she never saw Damron but once, and that was four or five years before. That when she reached Damron's place of business, her attorney pointed him out to her behind the counter, and she delivered the notice to him. She never saw him again, but when the case came on for trial in November, 1911, she pointed him out in the court room as being the same person to whom she delivered the notice. Her attorney testifies to the preparation of the notices, and his trip with her to the various saloons, and while he remembers going to Damron's place of business, he does not recollect whether Damron was there, or whether she delivered the notice to Damron, or some employee, or other person in the saloon.

Mrs. Keyser's fifteen year old son, Reece Keyser, testifies that at a certain time within the year before the suit was filed, he was in Damron's saloon with his father, and that Damron sold his father a glass of beer, and a pint of whiskey. Damron, the appellee, testifies that he has no knowledge of having sold Keyser any liquor, and that, in fact, he does not know Keyser, at least by name, and that neither Mrs Keyser, her attorney or anybody ever served any notice upon him with reference to John Keyser, nor did he ever hear of any such thing.

Less Caudill, who was bar tender for Damron, and had been for five or seven years, knew nothing of the notice, nor of Mrs. Keyser's visit to the saloon to serve it, in fact, never heard of the notice.

Gerard Luther swears that Mrs. Keyser did come there with the attorney, and delivered a notice to some one in the saloon, but that it was not Wayne Damron, the proprietor, for he swears positively that Damron was not there. He did not know to whom the notice was given, and would not swear that it was even handed to one of Damron's employes.

On the question of notice, this was the only testimony. As will be seen, it was quite conflicting, and it was the sole province of the jury to pass upon it, and determine the question. As above stated, they returned a verdict for Damron, believing that the evidence failed to show that Damron had been notified not to let him have

liquor. Because the evidence was conflicting, and sufficient to support their verdict in either event, we cannot disturb it.

Ordinarily this would be enough to say in deciding this case, but since the instructions are assailed by both sides, and it appearing that there are other cases pending at Catlettsburg involving the same question, we will consider the criticisms offered to the instructions which the court gave, and they are as follows:

"The jury are instructed that if they shall believe from the evidence that the plaintiff, Lizzie Keyser, on, or about Nov., 1907, gave to the defendant, Wayne Damron, a written notice, substantially the same as the one read in evidence, notifying him that her husband, Chas. Keyser, was an inebriate, or in the habit of becoming intoxicated, and for him not to sell or furnish him any intoxicating liquors, and if the jury shall further believe from the evidence that the defendant subsequent to the giving of such notice, if any, did, within one year prior to July 19, 1909, himself, or by his agent or bar keeper, sell or furnish to the said Chas. Keyser any whiskey or beer, then the law is for the plaintiff and the jury will so find and fix her damages as indicated in Instruction No. 3.

Instruction No. 2. The jury are instructed that unless they shall believe from the evidence that the plaintiff, Lizzie Keyser, prior to July 19, 1909, gave to the defendant, Wayne Damron, a notice in writing substantially similar to the one read in evidence, and that said notice was delivered by her to said Damron himself, then the law is for defendant, and the jury will so find.

"And the jury are further instructed that although they may believe from the evidence that said notice was given they will find for the defendant unless they believe from the evidence that within one year prior to July 19, 1909, the defendant, or his agent or barkeeper, sold or furnished to the plaintiff's husband, Chas. Keyser, some whiskey or beer and that same was so done subsequent to the giving of said notice, if any was given.

Instruction No. 3. The jury are instructed that if they should find for the plaintiff then they will allow her such a sum of money as they may believe from the evidence will fairly and reasonably compensate her for the mental suffering, if any, which she has endured, or that it is reasonably certain from the proof she will endure, as the direct or necessary result of the sale of intoxicat-

ing liquor, if any, made by defendant to her husband within one year prior to July 19, 1909; also for the loss, if any, of the support and services of her husband, Chas. Keyser, during said period caused by the sale of such liquor to her said husband by defendant within one year prior to July 19, 1909, if any was made within that time, and the jury may or may not, in their discretion, if they find for plaintiff in addition to the compensatory damages awarded plaintiff, if any, allow the plaintiff such further sum by way of punitive damages as you may believe is reasonable under the proof, not, however, exceeding in all the sum of $2,000, the amount claimed in the petition."

Assuming for the purposes of this case that there was injury or damage, the statute makes but three requisites for recovery. (1) That there was a selling or furnishing of the liquor; (2) that the person getting the liquor was an inebriate or habitual drunkard; (3) that it was sold or furnished in violation of a notice forbidding it.

A careful consideration of the instruction shows that the court submitted these questions in well chosen phrases.

Appellant submitted to the court ten other instructions, but, in the main, they are mere elaborations of single issues, which are submitted in the instructions given by the court. Where they are more than mere elaborations, they are attempts to inject other issues into the case, and, it seems to us, instead of aiding the jury they would serve to confuse it.

Appellant's main criticism is as to instruction two on measure of damages. Her counsel by brief say:

"Through this whole instruction and all others given by the court, the jury are required to say before they can bring in a verdict for the plaintiff just how much she was damaged by the identical liquor furnished her husband by the defendant. This the jury cannot do. Therefore, under such instructions, if this Honorable Court should hold that they were proper and the law governing this case, we submit, then, that the section of the statute upon which this action is based is a nullity."

We are unable to follow this process of reasoning. Juries have a great many difficult tasks imposed upon them, and this is particularly true in damage suits. Their verdicts are frequently assailed because the dam-

ages awarded cannot be calculated to a mathematical certainty, but such objection is rarely heard from the plaintiff. Certainly appellant would not expect to recover damages resulting from any sales not made or countenanced by defendant, nor for damages not the direct result of defendant's wrongful act. For the direct result of wrongful sales made by the defendant, the court allowed the jury to award such damages as will compensate her for the mental suffering she has endured, and for loss of support, and services of her husband. In addition to that, the jury are permitted to allow her a further sum by way of punitive damages. It may be that the jury in this case had submitted to them a question impossible to answer, or that it required them to branch out into the realm of conjecture and speculation. But, if this was a sound objection, then we would be compelled to hold that plaintiff was without any remedy at all.

Appellant next complains that the court permitted proof to the effect that her husband had been an inebriate for 15 years. Appellant concedes that this proof was heard without objection, but it is competent evidence in any event. The statute makes inebriety a requisite for recovery, and without proof to show that her husband was an inebriate, or habitual drunkard prior to the giving of the notice, appellant's case could not have been submitted to the jury.

We come now to appellee's objection. His first is that the instructions authorized a recovery against him if they believed he made the sale, while he claims the statute only authorizes a conviction when the sale was made "knowingly;" in other words, it is contended that he could not be compelled to respond in damages unless he knew he was selling to Charles Keyser, and knew that Charles Keyser was an inebriate. The objection perhaps would be well taken if this was a criminal prosecution under the first part of the statute. The right of civil action which the statute gives, is predicated on the written notice. If that fact is established, then as a matter of law it must be held that if Damron subsequently sold or furnished liquor to the party named in the notice, he knew to whom he was selling, and that he was an inebriate. The notice itself gave him this information. He must know to whom he sells, and the law does not excuse him if he forgets the information which the notice gave.

Neither can we accept his argument that a punitive damage instruction should not be given. In the first place the statute authorizes it, but appellee insists that there must be proof that the sale was wilful and malicious, otherwise the punitive damage instruction is improper. As before indicated, the chief requisite of the action is the notice. If the sale is made in violation of the notice, it may be deemed a wilful or malicious violation of it.

The judgment of the lower court is affirmed.