# L. & N. R. R. Co. v. Home Insurance Co. of New York, et al.

(Decided January 18, 1912.)

## Appeal from Hardin Circuit Court.

1. Railroads—Liability for Fires.—Railroad companies are liable for property destroyed by fire by sparks thrown from an engine, if the engine is not equipped with the most approved spark arrester or the engine is operated in a negligent manner.

2. Same—Evidence of Other Fires.—In an action to recover damages for property destroyed by fire by sparks thrown from an engine, it is competent to show that sparks were thrown from the same or other engines within a reasonable time before and after the time of the fire under investigation.

3. Same—Value of Property.—The plaintiff in cases like this is entitled to recover the value of the property destroyed, and in determining its value it is competent for either party to introduce as evidence every relevant fact that will throw light upon the value of the property.

BENJAMIN D. WARFIELD, CHAS. H. MOORMAN and LOUIS A. FAUREST for appellant.

G. W. HOLBERT, D. M. COOPER for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

K. W. Spencer owned a house situated about 61 feet from the railroad track of the appellant company at Sonora, in Hardin County. On June 8th, 1910, the house and contents were destroyed by fire. The property destroyed was insured in the appellee company for $1,200, and soon after the fire the insurance company paid to Spencer in settlement of the loss $791. Afterwards, the appellee insurance company filed an action against the appellant company, charging that the property was destroyed by a fire occasioned by its negligence and carelessness, and sought to recover judgment against it for the amount it had paid on account of the loss. Spencer also brought a similar suit, seeking damages in the sum of $1,700, the alleged value of the property destroyed. These actions were consolidated, and upon a trial there was a verdict and judgment in favor of the appellee company and Spencer for $808.65.

A number of grounds are relied on for reversal, but before discussing them a brief statement of the facts will be necessary.

The evidence shows that Spencer's house was made of wood, with a shingle roof. That at the time of the fire no rain had fallen for a long time, and a strong wind was blowing towards the house from the direction of the railroad track. That the fire was discovered in the roof of the house, on the side next to the railroad, about 10 o'clock in the morning, and some 15 or 20 minutes after a train known as No. 5 had passed. There had been no fire in any part of the house since about 6 o'clock in the morning, when the fire used in the preparation of break-fast was extinguished, and a daughter of Spencer testified that she was sitting on the porch near the railroad when train No. 5 went by, and that live sparks were being thrown from the smoke stack—one of them alighting on her arm and burning it. Other witnesses testified to the fact that this train as it passed was throwing out live sparks. After several witnesses had testified in detail concerning the condition of the house, the discovery of the fire, the movement of the train, and the fact that it was throwing out live sparks, the railroad company introduced a number of witnesses who testified that the engine was equipped with the most approved spark-arrester and was being properly operated. Other witnesses in its behalf said that the spark-arrester in use on the engine of train No. 5 was examined shortly before, as well as soon after the fire, and found to be in good condition, and that the same kind of spark-arrester had been used on all the engines of the company on this road for many months before as well as many months after the fire. There was also testimony to the effect that sparks sufficient in size and heat to start a fire could not escape through these spark-arresters. After the company had introduced a number of witnesses upon the condition of the spark-arrester, and the quality of the spark-arresters on engines running on that part of the railroad, Spencer was introduced in rebuttal and testified that in February, 1911, a fire had been started by sparks thrown from an engine, and other witnesses testified as to other fires that were started by sparks from engines in that vicinity in the fall and winter of 1910.

The first error complained of is the admission of this testimony in relation to other fires before and subsequent to the destruction of the house of Spencer. The ground of this objection is that this evidence was too remote from the time of the transaction under investigation to be competent. The general rule is that it is com-

petent to show in chief that other fires were started by sparks from locomotives operated by the company, shortly before as well as shortly after the fire in question. This evidence is admitted upon the theory that it tends to show a negligent habit or custom of the company in not maintaining in proper order its spark-arresters, or in negligently operating its trains. And the evidence introduced by the railroad company serves to explain the reason and propriety for the admissibility of evidence of other fires in rebuttal. It proved by a number of witnesses that all of its engines that operated trains along this road were at the time of the fire, and had been for many months before and afterwards equipped with spark-arresters of the same kind and the latest and most approved pattern; and, that it was not possible for live sparks large enough to start a fire on Spencer's house to escape through these arresters. When a railroad company has introduced this character of evidence, and relies on the continuous sufficiency of its equipment, the plaintiff may for the purpose of showing the inadequacy of the spark-aresters and rebutting the evidence of their sufficiency for the purpose intended, show the existence of other fires started by sparks from engines so equipped, and it is admissible under this rule to extend the inquiry as to other fires for a reasonable period before and after the fire being investigated, if there is evidence showing continuous acts of negligence in this respect. No exact standard can be laid down as to the period of time it would be proper to embrace in the inquiry along this line. This is a matter that necessarily addresses itself to the sound discretion of the trial judge, and its competency must be controlled in a large measure by the character of evidence offered. Kentucky Central R. Co. v. Barrow, 89 Ky., 639; Stowe v. L. & N. R. Co., 140 Ky., 291; C., N. O. & T. P. Ry. Co. v. Sadieville Milling Co., 137 Ky., 568.

It is also competent for the purpose of showing the size of sparks that may be thrown out of the smoke-stack through the spark-arrester to produce evidence of the size of the cinders that are found in the vicinity where the fire occurred. C., N. O. & T. P. Ry. Co. v. Cecil, 28 Ky. Law Rep., 830. We are inclined, however, to think that evidence of the fires in January, 1911, and in the winter and late fall of 1910 should not have been admitted, as these fires were too remote from the fire in question. But, it was so satisfactorily shown that the house

was set on fire by sparks from the engine pulling train No. 5 that this evidence was not prejudicial.

It is next insisted that the court erred in admitting evidence as to what it would cost to build a house like the one burned, and in excluding from the jury evidence of the market value of the house at the time it was destroyed. What the plaintiff was entitled to recover, if anything, was the loss he sustained by the destruction of his house. This measure of recovery would compensate him, and it was clearly proper to allow him to prove what it would cost to replace the house that was destroyed, and it was also admissible to give in evidence every relevant fact that would throw light upon its value, and aid the jury in ascertaining the amount of the loss the plaintiff had sustained, such, for example, as the value of the land where the house stood before it was destroyed and its value afterwards. But we do not understand how it would be practicable for any person to say what the market value of a house was, detached from the land on which it stood, unless it was intended to remove the house to another place or tear it down, as, ordinarily, houses have little value separate from the land upon which they are located. They are regarded as a part of the land, and when we speak of the market value of a building, it is generally understood to include the ground on which the building is located. The court did not refuse to permit counsel for the railroad company to prove the value of the place before and after the house was burned, but only ruled that it was incompetent to ask "What was the fair market value of that house at the time it was destroyed by the fire last year." This precise question was before the court in C., N. O. & T. P. Ry. Co. v. Falconer, 97 S. W., 727. In that case, which was a suit like this, to recover damages for the destruction of houses by fire, the court said:

"If the houses burned and sued for in this suit added little or nothing to the market value of the land upon which they were situated, because perhaps there was no market at that place for a storehouse or tenement houses of that class, it is, nevertheless, true that the owner was entitled to them uninjured by the negligence of any one else, and her right is as against any one tortiously destroying them to have her condition restored by giving her such a sum in money as will replace the destroyed tenements. This was the measure applied by the circuit court." See also L. & N. R. Co. v. Beeler, 126 Ky., 328.

In respect to the point that the court should have admonished the jury as to the purpose of the evidence of Allan R. Atkinson, who was introduced to prove statements made by Swift, a witness for the railroad company on a former trial that were in some respects in conflict with his evidence on this trial, we have read the evidence of Swift and Atkinson and while it would have been proper for the court to have told the jury that Atkinson's evidence was only offered for the purpose of showing, if it did show, that there was conflict between statements made by Swift on the first and last trials and impeaching his credibility as a witness the evidence is too unimportant to make it prejudicial error that the court neglected to give the usual admonition.

Another error assigned is that the court said in the presence of the jury that what the insurance company paid to Spencer for the loss on the personal property made no difference as it was no criterion of the value of the property. We think the trial judge was entirely within his rights in making this statement. Spencer was being examined by counsel for the insurance company as to the reasonable market value of the personal property that was destroyed, when the court said: "What you are endeavoring to show, now, as I understand it, is the whole amount lost by this man regardless of what the insurance company paid, what they paid is no criterion as to value." To this statement of the court exception was taken, whereupon the court said: "The value of his property lost is a question for the jury; it don't make any difference what you gentlemen did with the insurance money, whether you got too much or too little."

It is also contended that the court erred in submitting to the jury the question whether the employes in charge of the engine were guilty of negligence in operating it. The ground of this objection is that there is no evidence that they were guilty of negligence. We are unable to agree with counsel in this contention. There was evidence on the part of the plaintiff that live sparks were thrown out of the smoke-stack of this engine. There was evidence on the part of the railroad company that sparks of the size and character testified to by plaintiff's witnesses could not escape through these spark-arresters, and also evidence that an engineer can so operate his engine as to cause it to throw out an unusual quantity of sparks. So. that, if sparks of the size and character testified to by witnesses for the plaintiff did escape, the

spark-arrester was defective or the engine was operated in such a negligent manner as to force sparks through the spark-arrester of the size testified to.

A few other suggestions of minor errors are made by counsel but we do not think it necessary to extend the opinion discussing them.

Upon the whole case, our conclusion is that there was ample evidence to show, First: That the house was set on fire by sparks from the engine; second, that the property destroyed was worth fully as much as the jury assessed as damages, and third, that the fire was occasioned either by the use of a spark-arrester that did not fulfill the requirements of the statute or by negligence in the operation of the engine.

Wherefore, the judgment is affirmed.