## 6649. EMPIRE MILLS COMPANY *v.* BURRELL ENGINEERING AND CONSTRUCTION COMPANY.

1. The contract was plain and unambiguous, and the court erred in not construing it, and in submitting to the jury the question as to its meaning.
2. The damages sought by the defendant being for an injury to the defendant's house, and not to the land upon which the house was situated, the jury should have been instructed that the proper measure of damages was the amount necessary to restore the building to its condition before the injury was inflicted.

DECIDED JUNE 23, 1916.

Complaint; from city court of Columbus—Judge Tigner. May 3, 1915.

*McCutchen & Bowden,* for plaintiff in error.

*T. T. Miller,* contra.

WADE, C. J. Burrell Engineering & Construction Company brought suit against the Empire Mills Company to recover a balance of $882.45, on a contract for the erection of a concrete elevator, and the further sum of $150 for furnishing and installing a certain tank, the total amount claimed aggregating $1,032.45, principal. The defendant filed a plea alleging a breach of the contract on the part of the plaintiff, in that the plaintiff had failed to comply with a certain stipulation in the "brief of specifications" attached to and made a part of the contract, the stipulation referred to being as follows: "All gravel for concrete purposes shall be reasonably free from loam and vegetable matter. All gravel for foundation may be screened through a 2 in. ring. All gravel for bin walls, cupola walls, floors, roofs, columns shall be screened through a 1 1/4 ring." The defendant alleged that the plaintiff had failed to screen the gravel used in the concrete foundation, and thereby had injured and damaged the said foundation in the sum of $1,000, as more particularly set forth in the plea. The defendant claimed damages also in the sum of $2,500, because the plaintiff had, by improper construction of the said elevator, injured and damaged a brick building, near which the elevator was erected, as set forth in the plea.

1. The motion for a new trial presents but two questions which need be discussed. One of these relates to the construction of that provision in the building contract which refers to the gravel to be used in the concrete foundation and in the concrete walls. It is

complained that the court erred in refusing to give a requested instruction to the jury that the word "may" in the sentence "all gravel for foundation may be screened through a 2 in. ring," should be interpreted to mean "must," and that the meaning of this part of the contract is that all gravel must be screened,—that the gravel used for the foundation must be screened through a 2-inch ring, and that used for walls, etc., through a 1 1/4-inch ring. It is also complained that the court erred in submitting to the jury for determination the meaning of the word "may," and erred further in several instructions to the jury as to the contentions of the parties. In construing every contract it is necessary to look to the purpose intended, and where two constructions are possible, one unreasonable and the other reasonable, to give to the instrument the reasonable construction which would serve to put into effect the evident purpose of the agreement. It was insisted by the plaintiff that the provision as to the screening of the gravel must be interpreted strictly, and that the meaning of this stipulation is that the building company might, if it so desired, screen the gravel for the foundation through a 2-inch ring, but if it did not so desire, it was under no obligation to screen this gravel at all. This is undoubtedly the plain meaning of the language used, if it be considered apart from the context and without regard to the purpose for which this clause must have been inserted in the contract. It must be assumed that the reference to the diameter of the rings in the screen to be used for gravel intended for the foundation was not inserted in the contract idly and without any purpose whatever. To hold that the contractor was not bound by this clause to screen the gravel for the foundation at all, but the matter was to be solely left to his judgment, with the proviso only that if he should determine of his own free will and accord to screen it, he must use screens with 2-inch rings, would give the contract an absurd construction, as this would permit the contractor to use in the foundation walls anything that could be denominated "gravel," in the event he preferred not to screen that particular gravel; whereas if he decided to use a screen, voluntarily undertaking the extra expense incident to its use, he must use only gravel small enough to pass through 2-inch rings. In other words, such a construction would leave it optional with the contractor to incur or not incur the expense of screening the gravel used in the founda-

tion walls, but if he should decide, in the interest of good construction and at additional expense to him, to screen this gravel, it would place upon him, without any additional consideration or compensation, the further burden and expense of discarding all stone or gravel that would not pass through the 2-inch mesh. It is clear, then, that if the language relating to the gravel to be used in the foundation was intended to have any meaning whatever, it must have been intended as a stipulation that the contractor must screen this gravel, but would be permitted to use a screen with 2-inch openings. Again, looking at the context, it appears clear that the meaning of this paragraph of the contract was that all gravel, whether used in the foundation or in the walls, must be screened. If this is not the meaning of the paragraph, why stipulate the size of the ring through which the foundation gravel "may be screened," and in the next sentence further stipulate the size of the ring through which the gravel for the walls, etc., "shall be screened?" It can not be rationally contended that the word "may," used in connection with the foundation gravel, conferred upon the contractor the *privilege* merely of screening the gravel to be used in the foundation, for there is not elsewhere in the contract anything that would suggest that the opportunity to do other and additional work in connection with the preparation of the material to be used in the foundation could in any sense be considered a "valuable" privilege, or a privilege at all to the contractor. Taking the entire paragraph relating to the gravel to be used for concrete purposes, we hold that the only reasonable interpretation to be placed on it is that all the gravel was, by the express terms of the contract, to be screened, but the contractor was authorized to use a screen with larger openings for the foundation gravel than for the gravel intended for the walls. The court erred in failing to thus construe this portion of the contract, and in failing to instruct the jury in consonance with such a construction.

2. The other question that we deem it necessary to discuss to some slight extent is that raised by the 14th ground of the amendment to the motion for a new trial, in which it is alleged that the court erred in charging the jury that the measure of damages for the injury to the boiler-house of the defendant "would be the difference in value between the boiler-house in its condition at the time of the injury, if injury were made to it, for any purpose for

which the building, the boiler-house, was used or might be used, and for which it might have a value, and its value for the same purpose after the injury wrought by the defendant company's breach of its contract in constructing the elevator had been—after that injury had been effected." "As a general rule the measure of damages in actions for injuries to real property is the difference in value before and after the injury to the premises. . . In some cases the cost of repair or restoration has been adopted as the measure of damages [*Harrison* v. *Kiser,* 79 *Ga.* 588 (4 S. E. 320), and several other cases]; but in such event the cost of repair must be reasonable and bear some proportion to the injury sustained." 13 Cyc. 150, 151. "The value of the property destroyed, or the cost of restoring or replacing such property, is the proper measure of damages for the destruction of buildings, fences, and other improvements, which may at once be replaced, where the exact cost of restoring the property destroyed is capable of definite ascertainment, and where there is no damage to the realty itself." 8 R. C. L. 485, citing the following cases: Jacksonville &c. R. Co. v. Peninsular Land &c. Co., 27 Fla. 1, 157 (9 So. 61, 17 L. R. A. 33); Fitzsimons & Connell Co. v. Braun, 199 Ill. 390 (65 N. E. 249, 59 L. R. A. 421); McMahon v. Dubuque, 107 Ia. 62 (77 N. W. 517, 70 Am. St. R. 143); McGary v. Lafayette, 12 Rob. (La.) 674 (43 Am. Dec. 239); Johnson v. Farwell, 7 Greenl. (Me.) 370 (22 Am. Dec. 203); Witheral v. Muskegon Booming Co., 68 Mich. 48 (35 N. W. 758, 13 A. S. R. 325); Dwight v. Elmira C. & N. R. Co., 132 N. Y. 199 (30 N. E. 398, 28 Am. St. R. 563, 15 L. R. A. 612); Hartshorn v. Chaddock, 135 N. Y. 116 (31 N. E. 997, 17 L. R. A. 426, and note); Cleveland School Dist. v. Great Northern R. Co., 20 N. D. 124 (126 N. W. 995, 28 L. R. A. (N. S.) 757, and note); White v. Chicago &c. R. Co., 1 S. D. 326 (47 N. W. 146, 9 L. R. A. 824); Anderson v. Miller, 96 Tenn. 35 (33 S. W. 615, 54 Am. St. R. 812, 31 L. R. A. 604); note in 28 L. R. A. (N. S.) 758. Of course, if recovery is sought for injury to the freehold itself by reason of the taking or destroying of the property attached thereto, the measure of damages should be the difference between the value of the land before and its value after the injury. 8 R. C. L. 485, and cases there cited. The only fair construction that can be placed on the claim of the defendant for damages on account of the injury to its boiler-house

as set forth in the petition in this case is that damages are sought for the destruction of the building itself, and not for an injury to the freehold by reason of the destruction of the building. This being true, the court erred in giving to the jury the measure of damages complained of and above set forth in full.

The question is definitely settled in *Harrison* v. *Kiser,* 79 *Ga.* 588 (8), 595 (4 S. E. 320), which apparently has never been overruled or doubted, and which therefore is binding upon this court. In that case the Supreme Court held: "This suit being for an injury to the plaintiff's house, and not to his land, the true measure of damages would be whatever sum it would require to put the house in the condition in which it was before it was injured." The point was expressly made in that case, and was expressly passed upon, and the court held that a charge to the effect that the measure of damages was the difference between the value of the property before the injury and its value thereafter was error, though the court further held that the error was not material in that particular case, inasmuch as, from the facts of the case, the verdict was right, and the plaintiff was not entitled to recover any damages whatsoever. Id. 395. See also *Central R. Co.* v. *Murray,* 93 *Ga.* 256 (4), 257 (20 S. E. 129).       *Judgment reversed.*