10826.　ATLANTA, BIRMINGHAM & ATLANTIC RAILWAY Co. *v。* McRAE.

BROYLES, C. J.　1.　Under the pleadings and the evidence, no ground for reversal is presented by the exceptions to the charge of the court as to the measure of damages for the burning of the houses on the plaintiff's premises.　See, in this connection, *Empire Mills Co.* v. *Burrell Engineering, etc., Co.,* 18 *Ga. App.* 253(2), 256 (89 S. E. 530), and cit.; *Harrison v. Kiser,* 79 *Ga.* 588 (8), 595 (4 S. E. 320); *Central R. Co.* v. *Murray,* 93 *Ga.* 256(4), 257 (20 S. E. 129); *Louisville & Nashville R. Co.* v. *Kohlruss,* 124 *Ga.* 250, 251 (52 S. E. 166); 33 Cyc. 1389, 1391-2; 4 Suth. Dam. § 1018; Louisville & Nashville R. Co. *v.* Home Ins. Co。 (Ky.), 142 S. W. 398, and cit.

2.　It does not appear that the verdict is excessive.

3.　There was ample evidence to authorize the jury to find that the plaintiff's property was destroyed by a fire caused by burning sparks emitted from a locomotive of the defendant company.　As to whether the company was negligent or not, the great preponderance of the evidence was in its favor, but there was some slight evidence which authorized the jury to find that the presumption of the defendant's negligence, which arose upon proof that the fire was occasioned by sparks emitted from one of its engines, had not been completely rebutted by the evidence introduced by the defendant.　And as that finding was approved by the trial judge, this court is without authority to interfere.

　　　　　*Judgment affirmed. Luke and Bloodworth, JJ., concur.*

　　　　　DECIDED DECEMBER 9, 1919.

　Action for damages; from city court of Greenville—Judge Revill.　July 1, 1919.

McRae sued the railway company for damages in the sum of $1,455, on account of the destruction of certain property of the plaintiff by fire alleged to have been caused by sparks emitted from a locomotive. The petition gave an itemized statement of the property, including a dwelling house valued at $1,200, and outhouses, fences, and other improvements of value stated, the whole amounting to the sum sued for. The trial resulted in a verdict against the railway company for $850. The defendant moved for a new trial, on the grounds that the verdict was contrary to law and the evidence, and excessive, and that the court erred in certain instructions to the jury as to the measure of damages, and in not giving in charge the correct measure of damages. The motion was overruled, and the movant excepted. In the brief of counsel for the plaintiff in error it was admitted that "the evidence, though circumstantial, would authorize a finding that sparks from the engine set fire to the house," but it was contended that the evidence for the defendant rebutted any presumption of negligence in the condition or operating of the engine.

1. As to damages the court charged the jury as follows: "If you find the defendant is liable for this fire, then you go forward and determine what damages Mr. McRae sustained by reason of the fire; take all the evidence and determine that. He sued in the aggregate for $1,455. He says he had a house with a seven-foot hall and with a front porch and back porch attached to the same,—four-room dwelling house. He must show you the market value of that house at the time of the fire. If he has shown the railroad company is liable, he would then be entitled to recover whatever the value of that house is shown to be at the time it was destroyed by the fire. He says he had one smoke-house of the value of $70. Well, gentlemen, the same thing as to that. He must show how much he was damaged, the market value. If he has shown that and has shown you what his damages were, he would be entitled to recover whatever the evidence shows the damages were on this occasion, and the measure of damages is the market value of the property at the time the property was destroyed by the fire, if the railroad company was liable." In the motion for a new trial it was contended that these instructions were erroneous, "because all of the damages sued for in this case

are to the improvements on the lot, which were, as a matter of law, of the freehold; and the amount which the plaintiff was entitled to recover, if any, was the diminution in the market value of the premises, or corpus or freehold; the value of the house was not the correct measure of damages."

2. In the motion for a new trial it was contended that "in no event was the market value of the buildings and improvements burned, with interest, equal to the amount of the verdict." The plaintiff testified that he built the dwelling house in April, 1905, at a cost of about $950, and it was burned in June, 1917, and at the time of the burning nothing was decayed about it but the roof, and it was then worth at least $800 or $900. He further testified that the price of lumber was lower in 1905 than when the house was burned, and, taking into consideration the price of lumber at the time of the burning, he would say that the value of the dwelling house at that time "would have been $1,200 or $1,400." Values of other improvements burned were stated, aggregating about $150 or more. A witness who stated that he was a builder and contractor testified: "When Mr. McRae's house was burned . . the dwelling and everything around it I considered worth $1,000. . . I consider the house burned was worth $1,000. . . I testified that the market value of this house was $1,000. I based that estimate on just the lumber and labor it would take to build a house like it." To replace everything "would cost now $1,360, about $1,360 in 1917, I think." Witnesses for the defendant testified that "the fair market value of that place at the time the house was burned was . . about $600," and that the fair market value of the house at that time was $400 to $600.

3. It was testified that the fire which burned the houses was seen just after the train passed, that it was "puffing more than usual when it passed," and that "it seems that the steam was kinder low when they were switching in there, and fire kinder red, and caused a lot of fire and smoke and sparks to fly; the sparks were about as big as your thumb," and "went right to the house." Later the witness who made this statement as to the size of the sparks testified that he did not examine them, that he saw the live coals and the flame around them, but would not attempt to tell the actual size of the cinders or sparks. The

engineer and the fireman of the locomotive and the engine-inspector of the defendant testified as to the condition of the engine and the spark-arrester. It was testified that the netting and other appliances used to prevent the escape of sparks from the engine were of the best make known and were in good condition when the train passed the plaintiff's property on the day of the fire; that they were of the kind in general use on railroads; that there was no way to prevent entirely the escape of sparks from the engine when in operation, and that it was being operated in the usual manner. It was further testified that sparks as large as the end of the thumb or of the little finger could not have got through the spark-arrester if it was in good condition.

*Brandon & Hynds, McLaughlin & Jones, Hatton Lovejoy,* for plaintiff in error, cited as to the sufficiency of the evidence: 12 *Ga. App.* 233, 236; 101 *Ga.* 747, 752; 108 *Ga.* 165; 114 *Ga.* 712; 115 *Ga.* 664; 117 *Ga.* 883. Measure of damages: 124 *Ga.* 250; 129 *Ga.* 526, 531 (5); 87 *Ga.* 605 (2); 93 *Ga.* 256 (4).

*N. F. Culpepper,* contra, cited: 113 *Ga.* 335; 4 *Ga. App.* 439; 93 *Ga.* 257 (4); 114 *Ga.* 638 (3); 12 *Ga. App.* 239, and cit.