28709.   POWELL *et al.,* receivers, *v.* BLACKSTOCK.

DECIDED FEBRUARY 12, 1941. REHEARING DENIED MARCH 5, 1941.

*Cleveland Rees, Dykes, Bowers & Dykes,* for plaintiffs in error.
*O. N. Singleton, M. A. Walker,* contra.

GARDNER, J. ■ In a tort action the failure of the pleader, when praying that process issue and that the defendant be and appear to answer the petitioner's complaint, to pray, verbatim et literatum, that "judgment be given" in a stipulated sum or sums, will not for that reason defeat the cause of action or render the court impotent to give judgment in the event of recovery. For authority inferentially for this rule, see *Pitts & Son Co.* v. *Bank of Shiloh,* 20 *Ga. App.* 143 (2) (92 S. E. 775). Where the verdict may be returned in a single sum, though it be the aggregate of several items specified, judgment would follow. But there are causes of action in which relief or recovery sought may be several and divergent, when specification in the prayer would become necessary, or else the action would fail. *Riordan* v. *Baldwin,* 150 *Ga.* 540 (104 S. E. 204).

■ The allegations that the timber which was negligently damaged at the hands of the defendants by burning, in the sum of $300, and that fence also burned was damaged in the sum of $100, or a total of $400, were not subject to demurrer as a conclusion of the pleader. The plaintiff was pleading an ultimate, material fact as to the extent of damage. This was sufficient. *Lefkoff* v. *Sicro,* 189 *Ga.* 554 (10) (6 S. E. 2d, 687). Facts as to the value of the land, or the timber, or both, before the burning, as compared to the resultant values obtaining after the burning, are evidentiary and need not be pleaded. *Lefkoff* v. *Sicro,* supra; *Price* v. *Cobb,* 63 *Ga. App.* 694 (11 S. E. 2d, 822).

■ Headnote 3 needs no elaboration.

■ Except where motive is the foundation of a cause of action, motive for bringing the action is immaterial. In the instant case

the cause of action is predicated on the right to recover for the tortious injury to the plaintiff's property. If the cause of action is supported in law and fact, extraneous of the motive for bringing the action, the motive of the plaintiff for denying or availing himself of the remedy to redress the wrong is not material. The court did not err in sustaining the objection to certain evidence offered by the defendants, that the plaintiff had told the witness "that the only reason he filed this suit was because the railroad had treated him wrong about a hog."

■ The court charged the jury: "If . . you should encounter irreconcilable conflicts, then it becomes a matter for you to determine for yourselves which evidence you will accept as the truth and which you will reject under such circumstances; and where you find irreconcilable conflicts the law brings to your aid, in order to ascertain the truth, certain rules that you may bear in mind, and you may also bear those rules in mind to determine where the preponderance of evidence lies." The court gave in charge the rules in question. The effect of the fourth assignment of error in the motion is that the court erred in charging the jury that, when the jury encounters irreconcilable conflicts, it becomes a matter for the jury to determine for themselves which evidence they will accept as the truth and which they will reject. This assignment is without merit. The rule is that while relevant testimony by witnesses who are not impeached can not arbitrarily be disregarded by a court or a jury upon the assumption that it was not, in point of fact, in accord with the truth (*Seaboard Air-Line Railway* v. *Walthour,* 117 *Ga.* 427, 43 S. E. 720), and while facts testified to by disinterested witnesses who are in no way discredited, within their knowledge and not improbable, and *not in conflict* with other evidence, are to be taken as legally established (*Campbell* v. *State,* 157 *Ga.* 233, 235, 121 S. E. 306), yet where there are conflicts in the evidence and the testimony of witnesses is contradicted (*Georgia Southern & Florida Railway Co.* v. *Thompson,* 111 *Ga.* 731, 36 S. E. 945; *Georgia & Alabama Railway Co.* v. *Cook,* 114 *Ga.* 760, 762, 40 S. E. 718), such evidence need not be taken as legally established; and, if the conflicts can not be reconciled, it is for the jury to determine for themselves which evidence they will accept as the truth and which they will reject.

■ When the court charged the jury, as to the term "ordinary

care," that the "law does not lay down any given rule whereby you can determine what ordinary care is, except that [it] is a relative term, and it is that care which an ordinarily prudent person would exercise under the same or similar circumstances," and that "before the railroad company could be held responsible for damages alleged to have resulted from the alleged fire . . you must believe that it was . . set out" by the agents of the company, and that "the railroad company through its agents and employees did not exercise ordinary care to protect the property of others in setting out that fire," the court did not err in failing, in the absence of a timely written request, to enlarge on the definition, or in failing to charge the definition of ordinary care as applied to the preservation of property. While the Code, § 105-201, provides that ordinary care or diligence as applied to the preservation of property "means that care which every prudent man takes of his own property of a similar nature," such provision under the pleadings and facts in the instant case are inapplicable. The duty resting upon the defendants was that they should so act as not negligently to injure the property; there was no original duty upon the defendants to *preserve* the property, as, for example, would have existed had they been bailees of the property. The criticism of the charge, that the court did not state correctly the measure of damages, that "for fencing injured or destroyed the recovery should be measured by the cost of restoring it and making its condition as good as that in which it was when injured or destroyed" (*Central Railroad & Banking Co.* v. *Murray,* 93 *Ga.* 257 (4), 20 S. E. 129), is meritorious, but does not require a reversal. That rule must be considered in the more inclusive rule set out in *Louisville & Nashville Railroad Co.* v. *Kohlruss,* 124 *Ga.* 250 (52 S. E. 166) : "The measure of damages for the negligent firing and destruction of the fencing and ornamental trees on the plaintiff's land by the railroad company in the operation of its train was the diminution in value of the premises resulting from the injury caused by such firing." We think this rule was sufficiently presented in the charge as a whole, and that there was some evidence as to the value of posts for restoring the fence, and as to labor in that connection, which would render harmless, in this case, the omission to charge the rule fully.

The evidence authorized a finding that the land along which

the railroad was located was conveyed to the defendants originally "to construct and equip a railroad," and that the land conveyed "for such purpose" should extend seventy-five feet on each side of the center of the railroad, and should "vest in said railroad company only for railroad purposes;" that the plaintiff owned the lands through which the railroad lay, but subject to the deed to the railroad to the easement to the right of way "for railroad purposes;" that the wire fence in question was located between the outer boundary of the right of way and the road-bed; and that the fence was so placed and maintained neither with the acquiescence nor over the objection of the railroad. Under such facts there is no merit in the contention (sixth assignment of error) that the fence had become a part of the realty within the right of way of the defendants, and was the property of the railroad company. The defendants had only an easement *for railroad purposes;* and the presence of the fence, though on the right of way, was antagonistic to, and not in consonance with, the easement, and accordingly did not become a part thereof, but remained as a part of the fee possessed by the plaintiff, and entitled him to recover for injury thereto. Accordingly, the charge to the jury was not error, as to the plaintiffs in error, for the reasons assigned.

■ Exceptions are taken (seventh assignment of error) to the following instruction: "I charge you, gentlemen of the jury, that if you should believe by a preponderance of the testimony that the fire in turn was the proximate cause of the timber becoming infected [infested], and that this infection [infestation of bugs] resulted in the destuction of some of the timber, that would be an element of damage that you could [would] consider. On the other hand, if you should not believe by a preponderance of the testimony that the infection [infestation] resulted directly from the fire, but was an independent agency or cause springing up, and that the damage resulted from that, then, although you might believe the defendants are liable, they would not be liable for any damage resulting from such independent cause or agency." The criticism that this charge was error in that any damage to the timber from burning must be determined by the condition of the timber *immediately after the fire* as compared with its condition immediately before the fire, and that the charge as given caused the jury to consider that the damages as shown to exist

might have arisen *at any time* after the fire, is not meritorious. The court in effect properly charged that any damage arising from infestation, and at the time thereof proximately produced by the negligent burning weeks or months previously, was a proper element of damage for the jury's consideration in determining the ultimate total diminution in the value of the land on which the timber was growing when burned, *especially where this element or nature of damage could not reasonably have arisen immediately with the burning, but only weeks or months later.* The court further properly charged that for this element of damage to be compensable it had to flow directly from the negligent burning, and not from an independent agency proximately causing the infestation and damage.

■ Exceptions are taken (eighth assignment of error) to the following charge: "Now the measure of damages would be the difference between the market value of the realty alleged to have been damaged (and growing timber is a part of the realty) — would be the difference in the market value immediately before the alleged fire and the market value after the alleged fire, if you find that there was a depreciation in that market value. In other words, if there was a depreciation resulting directly from the fire, and you believe the defendants liable, then the plaintiff would be entitled to recover the value of that depreciation, whatever you might find that to be. He has the burden . . of showing you what depreciation, if any, there was." As to damages *immediately* arising from the burning, identified in the diminution of the realty from what that value was immediately before the burning, the charge was not subject to the criticism that it allowed a range of *indefinite time after the burning* in which to determine the quantum of damages sustained. We think, as to this class of damages, the jury understood the correct rule, that, if the railroad was liable, the question for the jury's determination was the value of the premises to the plaintiff before the fire occurred, and "how much has the value of the premises been diminished since the fire occurred." *Louisville & Nashville Railroad Co.* v. *Kohlruss,* supra.

10. While the evidence was highly conflicting, we think, resolving the conflicts in favor of the verdict (*Western & Atlantic*

*Railroad* v. *Mathis,* 63 *Ga. App.* 172, 10 S. E. 2d, 457), that there was sufficient evidence to support the finding.

*Judgment affirmed.* *Broyles, C. J., and MacIntyre, J., concur.*