41290. CITY OF ELBERTON v. J. C. POOL REALTY COMPANY, INC.

ARGUED MAY 3, 1965—DECIDED JUNE 1, 1965.

*Lavender & Cunningham, Erwin, Birchmore & Epting, Eugene A. Epting,* for plaintiff in error.

*Grant & Matthews, Carlton G. Matthews, Jr.,* contra.

RUSSELL, Judge. ■ The defendant's motion for judgment notwithstanding the verdict is predicated on the contention that none of the acts of negligence alleged by the plaintiff was supported by evidence. Pretermitting the question as to whether the escape of water from and subsequent capping off of a 12-inch water main near the plaintiff's building which had burst at some time prior to 7:10 a.m., but which was not capped off until around 8:30 a.m., could have been a part of the proximate cause of a build-up of water pressure so as to cause a rupture in the pipe in plaintiff's attic (it appearing that this break occurred prior to 7 a.m.), nevertheless the plaintiff offered evidence substantiating its allegations of negligence which charged that the City of Elberton, when it drained its water tank and thereafter isolated it from the water system, failed to take necessary precautions to avoid excess water pressure and severe shock waves resulting therefrom; failed to take precautions to maintain a constant water pressure when it knew that cutting off the water tank deprived the system of its most effective water pressure regulator and means of absorbing shock waves, and failed to notify the plaintiff so as to give it an opportunity to cut off the water sup-

ply coming into the building in order to protect it from these hazards. It appears that the operation of draining the water tank was commenced during the night; that at about 3:30 a.m. there was a failure of water pressure, and that at about 3:35 a.m. a pump was cut on to increase the water pressure. There was evidence that a water tank acts as a shock absorber for shock waves set up by the sudden drops and surges of water pressure caused by the use of pumps; that the shock waves set up a vibration in pipes used for plumbing and carrying of water, and that these vibrations can be severe enough to rupture pipes, blow out valves, and cause leaks of various types. In fact, the superintendent of the water system wrote the city manager stating in regard to "the events which led up to the water distribution system difficulties on Monday, June 17 . . . each starting and stopping of the pump or closing of the valve too rapidly will cause a shock wave to travel throughout the distribution system. If there is a weak point in the system it will appear at this time. Normally the tank absorbs the shock wave." It also appeared that between 3:30 a.m. and 7 a.m. a number of other buildings were flooded with water due to pipe leaks, as well as the large underground leak in a 12-inch water main. No other cause for the ruptured 2-inch pipe in the attic of the plaintiff's building is suggested. The testimony was that the abnormal conditions started at the time the tank was isolated from the system and the pumps cut on. The testimony was accordingly sufficient to establish that the way in which the city handled the problem of draining its tank caused the plaintiff's damage. Cf. *Dalon Contracting Co. v. Artman,* 101 Ga. App. 828 (115 SE2d 377). There was also testimony that industrial water tanks were available for the city to use during the period its own tank was out of commission, and that use of a water tank will prevent the effect of the shock waves due to fluctuating pressure from water pumps. Whether failure to use this or some other method, or, in the alternative, to warn city residents of the danger of the procedure so that they would have an opportunity to turn off the water supply entering buildings serviced by the system, was a lack of ordinary care, was entirely a jury question. The city is liable for its improper or unskillful performance of its ministerial duties. *City of Griffin v. Griffin Chero-Cola Bottling Co.,* 35

Ga. App. 779 (1) (134 SE 812). The motion for judgment notwithstanding the verdict on the ground that no actionable negligence had been proved was properly overruled.

■ As to the first special ground of the motion for a new trial, the only evidence offered as to a $200 item of damages was that a pharmacist who was a lessee of the plaintiff had suffered a water damage loss in this amount due to water seeping down and spoiling certain drugs and merchandise, and that the plaintiff had paid him $200 in settlement of this loss. The lease was not put in evidence nor does it appear that there was any assignment of Dr. Booth's claim to the plaintiff, nor even that there was an agreement the plaintiff be subrogated to the latter's claim against the city. This item of damages is therefore not supported by evidence. *State Farm Mut. Ins. Co. v. Jones,* 98 Ga. App. 46, 56 (104 SE2d 725). Since the jury returned a verdict for the full amount sued for less one item which was stricken by the court, it is obvious that this sum was included in the verdict, and the first special ground of the motion was well taken.

■ The measure of damages for injury to a building is usually the amount necessary to restore it to its condition before the injury. *Empire Mills Co. v. Burrell Engineering &c. Co.,* 18 Ga. App. 253 (89 SE 530). This should be shown by the cost of repairs to the building. *Edelson v. Hendon,* 77 Ga. App. 395 (48 SE2d 705). The undisputed evidence here showed, as to an item of loss due to destruction of an asphalt tile floor by water, that the flooring was properly replaced after the flooding by efficient repairmen who did the job properly; that thereafter dampness in the wood structure caused by the original flooding caused these tiles to buckle; that this condition was not known to the plaintiff when the floor was first relaid; that it was necessary to have the work done over and this time the plaintiff dealt with a contractor who undertook to replace any flooring which buckled and that as a matter of fact continued dampness within the structure did cause the floor to have to be redone a third time, the second contractor absorbing this cost. Since it was necessary that the floor be replaced within a reasonable time, since the original negligent act resulted in the damage which caused it to be replaced a second time, and since this condition was not known to the plaintiff at the time the first contract was

entered into, it does not appear that the plaintiff, in recovering both items of expense, is recovering twice for the same damage. Nor are the damages too remote and contingent because they occurred at a time subsequent to the original damage, provided they related to and proximately resulted from the original act. *Powell v. Blackstock*, 64 Ga. App. 442 (8) (13 SE2d 503).

The instruction complained of in the third special ground is taken from *Williams v. Grier*, 196 Ga. 327, 337 (26 SE2d 698), and deals with the defendant's liability for injurious consequences which it should have anticipated. Where the court charged in the next sentence that any allegations of negligence must be the proximate cause of the damages, and on three prior occasions instructed the jury that unless they found the defendant negligent in at least one of the particulars set out in the petition it could not recover, the excerpt, considered with the remaining instructions on the subject, is not subject to the criticism that it allowed the plaintiff to recover although no negligence was proved.

The trial court did not err in overruling the motion for judgment notwithstanding the verdict, but erred in overruling the first ground of the motion for a new trial.

*Judgment affirmed with direction that the court write off from the verdict the sum of $200. Felton, C. J., and Jordan, J., concur.*