## Louisville & Nashville Railroad Company v. Haggard.

(Decided December 1, 1914.)

### Appeal from Knox Circuit Court.

1. Railroads—Fire On Right of Way—Evidence.—Proof that a fire started on the railroad right of way is not sufficient to warrant a recovery on the ground that the engine was not properly equipped with spark arresters without some evidence of negligence.

2. Railroads—Fire on Right of Way.—Proof that the right of way was not kept clear of combustible material will not warrant a recovery where negligence in this respect is not alleged and negligence in other respects is alleged in the petition.

3. Railroads—Fires.—The railroad is not liable for failure to put out a fire which, when discovered, had spread to adjoining property, if not negligent in the origin of the fire.

4. Railroads—Fires—Recovery For.—One who is sick in bed and is suffocated and physically injured by a fire negligently started by a railroad company may recover for the injury though the house is not burned.

5. Railroads.—Proof that such a person was made sick does not warrant a recovery for permanent injury without proof of such injury.

BENJAMIN D. WARFIELD and BLACK, BLACK & OWENS for appellant.

J. M. ROBSION for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

Mrs. Mossie Haggard lives in Knox county, her home being about a hundred feet from the track of the L. & N. R. R. Co. On November 4, 1912, she was confined to her bed by reason of the fact that she had given birth to a child ten days before; on that day a fire started on the right of way of the railroad, near her house, and was carried by the wind towards her house, the wind blowing from the track in the direction of the house. There was a large amount of weeds and other inflammable material on part of the ground and the flames ran about ten or fifteen feet high; although the fire did not reach the house, the sparks and heat from it were carried into the house and Mrs. Haggard was suffocated by the smoke, and made sick from the hot air carried into her lungs. She brought this action against the railroad company to recover for her personal injury, and a judgment for $900 having been rendered in her favor, the raiload company appeals.

No witness intoduced on the trial saw the origin of the fire; one witness testified that he passed the place and there was no evidence of fire at that time, but that on his return, half or three-quarters of an hour afterwards, the fire was burning, and that a passenger train called "The Short Dog" passed there not over five or ten minutes before he saw the fire. The fire started on the right of way and burned from it to the adjoining property; this he

concluded from the looks of things when he saw the fire, which had then reached the adjoining property. It was a dry time. The railroad section hands had mowed the right of way about a month before, and had left the weeds and other things they cut lying on the right of way. The weeds were high and there was a considerable amount of this dry material in which the fire started. All the witnesses introduced on the trial concurred in stating that the fire started on the right of way, although none of them saw it start there. Section 782, Kentucky Statutes, provides:

"All companies shall place in, on or around the tops of the chimneys or engines, a screen, fender, damper or other appliance, that will prevent, as far as possible, sparks of fire from escaping from such chimneys."

The plaintiff introduced no other evidence than that we have stated, and it is insisted that, having shown that the fire started on the right of way soon after the passenger train passed, she made out a *prima facie* case of negligence on the part of the defendant. It is provided that the killing or injuring of cattle by the engines or cars of any railroad company shall be *prima facie* evidence of negligence on its part (Ky. Statutes, Sec. 809), but there is no such provision as to fires started by an engine or train. Section 782 only requires that such appliances be used as will prevent, as far as possible, sparks of fire from escaping; the statute thus recognizes the possibility of sparks escaping under any circumstances, and so it has been held that the railroad company is only required to provide the best and most effectual preventive of practical use known to science so as to prevent, as far as possible, injury being done. Ky. Central R. R. Co. v. Barrow, 89 Ky., 638; L. & N. R. R. Co. v. Taylor, 92 Ky., 55.

In the absence of a statute, negligence is not presumed, and to make out a *prima facie* case, the plaintiff must introduce evidence of negligence on the part of the defendant. In L. & N. R. R. Co. v. Dalton, 102 Ky., 292, we said:

"Before liability can be fastened on the company for want of proper screens on its engines, or, because of their defective condition, there must be some evidence to show such want or defective condition, such as that an unusual quantity of live sparks were being emitted while the train was going at an ordinary rate of speed, or that the

same engine started several successive fires on the same trip, or the like.''

Again, in L. & N. R. R. Co. v. Hamburg-Bremen Fire Insurance Co., 152 Ky., 514, we said:

''It was necessary for plaintiffs to show facts from which it could be reasonably inferred that the fire was due to the negligence of the defendant. Having failed to do this, we conclude that the court erred in refusing defendant a peremptory instruction.''

To the same effect see Cincinnati, &c., R. R. Co. v. Bagby, 155 Ky., 420; Cincinnati, &c., R. R. Co. v. Sadieville Milling Co., 137 Ky., 574.

In this class of cases we have held that negligence may be shown by testimony that sparks and cinders were carried from the locomotive in unusual quantities, or that locomotives under the management of the defendant frequently set fire to fences and grass along the right of way of the road in the vicinity of the plaintiff. (L. & N. R. Co. v. Samuels, 22 R., 303; Mills v. L. & N. R. R. Co., 116 Ky., 309; I. C. R. R. Co. v. Hicklin, 131 Ky., 624, and cases cited.)

The case of Cincinnati, &c., R. R. Co. v. Falconer, 30 R., 152, is not inconsistent with those cited; in that case it was shown that for several days previous to the fire passing trains had started fires in fields along the right of way as far removed as the building in question, and that the train which passed just before the fire, running very rapidly, emitted cinders as large as a man's thumb nail. The language relied on by counsel in that opinion was used with reference to the facts there before the court. In all the cases where recovery has been sustained there was some proof of negligence outside of the mere fact that the fire started. We, therefore, conclude that, as negligence is not presumed, the plaintiff must introduce some evidence of negligence in cases of this character, for, with the best management, fires must sometimes occur so long as fire is used to obtain the motive power for the operation of trains. Section 790, Kentucky statutes, provides:

''Every company shall keep its right of way clear and free from weeds, high grass, and decayed timber, which from their nature and condition, are combustible material, liable to take and communicate fire from passing trains to abutting or adjacent property.''

The proof introduced by the plaintiff on the trial was sufficient to show a violation of this section and that by

reason of it the fire occurred. But in the petition this ground of recovery was not set up. The petition charged simply negligence in not having the engine properly equipped with spark arresters. The circuit court, for that reason, did not give any instruction submitting this matter to the jury; this was proper, as the plaintiff must recover upon her pleading, and she cannot recover upon a state of fact not alleged, although shown to exist.

The plaintiff alleged in her petition, in substance, that the defendant, after it had notice of the fire and of the plaintiff's peril therefrom, failed to use proper care to put out the fire. But these facts make out no cause of action against the defendant. If the defendant's negligence started the fire, it was answerable for the injury the plaintiff sustained therefrom, whether it used proper care to put it out or not after it had notice of it. If the defendant negligently failed to put out the fire when it could have done so, this added nothing to its liability if it negligently started the fire. If it had not negligently started the fire, its failure to put it out imposed no liability upon it. The fire had burned beyond its premises before it had notice of it, and while it was under a moral duty to protect the property of its neighbors, its duty in this regard was the same as that of the other neighbors. All the evidence on this subject should have been excluded, as the defendant's liability turned simply on the question whether it negligently started the fire. We do not hold that a person may not be negligent in failing to take proper care to prevent a fire, originating on his premises, from spreading to the premises of another, although the fire may have been started by a stranger without any fault on his part. That is not this case, for here the fire, when discovered, had spread beyond the property of the railroad company, and if the company was negligent, it was liable in damages, although the fire went from its premises, first to the premises of another, and from there to the plaintiff's premises. (Cincinnati, &c., Co. v. Barker, 94 Ky., 71.)

As the cause of action which was pleaded was not proved, and as the facts showing a right of action which were proved were not pleaded, the court should have instructed the jury to find for the defendant. But on the return of the case the plaintiff will be allowed to amend her petition and set up the facts showing a violation of Section 790 as a ground of recovery.

This brings us to the vital question in the case. The defendant insists that there can be no recovery for the plaintiff's personal injury. It is insisted that the statute only intends to protect adjoining property; but by Section 466, Kentucky Statutes, a person injured by the violation of a statute, may recover from the offender such damage as he may sustain by reason of its violation; and under this provision we see no reason why one who sustains a personal injury by reason of a fire negligently started by a railroad company may not recover compensation therefor. In Gulf, &c., R. R. Co. v. Johnson, 51 S. W., 531, a child lying in a cradle in its parents' home was injured by a fire escaping from a locomotive negligently operated and setting fire to the covering of the cradle, and thus burning the child; a recovery was sustained. In like manner recoveries have been sustained where children in houses were burned when the house was thus negligently set afire. (Birmingham Light Co. v. Hinton, 141 Ala., 606, 146 Ala., 273.)

We do not see that there can be a substantial distinction taken between the cases where the person of the plaintiff is externally burned by the fire and those cases where the plaintiff is physically injured by being suffocated by the smoke, or the lungs are burned by the hot air. In either case, there is a physical injury, one external, the other internal; but it is none the less a physical injury because internal.

It is insisted that the damages are too remote; the defendant having no notice of the plaintiff's sickness or her infirm condition, and therefore no reason to anticipate any such injury to her. In answer to this contention in Kentucky Heating Co. v. Hood, 133 Ky., 389, citing many authorities, we said:

"It is not material whether it was in the contemplation of the wrong-doers that loss of business or profit would result to the injured party. In actions for breach of contracts, the rule generally held to is, that only such damages can be recovered as are actually sustained, or such as it is reasonable to conclude were within the contemplation of the parties at the time the contract was entered into. 2 Chitty on Contracts, p. 1324. But this measure that obtains in contracts will not be applied in actions sounding in tort. There is a wide difference between the rights and remedies allowable in the one case and in the other. 1 Sutherland on Damages, Sec. 15. It is the wrongful act done, and the consequences that nat-

urally result from it, that the law looks at and holds the wrong-doer responsible for. A person who commits a tort like this is liable for all the damages that naturally flow from, and are the result of, this wrongful act, although he may not at the time have given any thought to or have anticipated that injurious consequences would follow. It is no excuse or defense for the wrong-doer that he did not mean to commit any wrong, or did not know that any injury or loss would ensue.''

When the fire started on the defendant's right of way it naturally spread to the adjoining property and the smoke and heat from it were then naturally carried into the plaintiff's residence. The defendant is answerable for this wrong, although it did not know that any personal injury to the plaintiff would ensue from it. In L. & N. R. R. v. Daugherty, 108 S. W., 338, which was a similar case, we said:

''When appellant's negligence obliged appellee to remain standing on the platform, exposed to the weather, it became responsible to her for all the injuries she sustained directly traceable to its negligence. It may be conceded that appellee's loss of health was much aggravated by the fact of her sickness, and that except for this sickness the exposure to the cold would not have affected her seriously, or have been especially harmful. Hence, it is said for appellant that, as it could not have anticipated or known of appellee's condition, it should not be chargeable with the consequences that resulted from it. In other words, its claim is that the impairment of appellee's health was due, not to the obstruction that interfered with her going into the station, but to the fact that she was at the time sick. Upon this point we may say that, if a person injured is feeble, sick, or diseased, and the negligence or wrongful act aggravates the illness or disease, or produces conditions that would not ordinarily or reasonably have existed or occurred except for the negligence or wrongful act, and are directly attributable to it, the injured party may recover all the damages that would flow from the negligence or wrongful act, including such as result from illness, sickness, or disease aggravated by or that are produced by it, although the person inflicting the injury may not at the time know that the person injured is laboring under any infirmity, sickness or disability.''

To the same effect see L. & N. R. R. Co. v. Roney, 127 S. W., 158.

The plaintiff was the only witness introduced to show her injuries. Her testimony, put in narrative form, is as follows:

"I heard the roar of the fire; the smoke was in the house; it was full of smoke all evening. The fire burned about an hour; the smoke was very thick; it caused me to cough and weary, and get too hot, and stifled me very bad; it suffocated me about an hour; the atmosphere in the room was hot; it made me weak and trembly, and right nervous and sick at my stomach; it caused my breath to be short and burned me in the lungs seemed like. The smoke was so thick, and the air so hot, that it hindered me from breathing; it caused my back to be so weak, and I took a jerking spell, and just jerked and trembled; and I was so hot seemed like I couldn't live, and it stifled me. I am suffering yet every day until now; I had no fever when the fire came up; my fever was 103 the next night; my health until then was good; I have not been able since to do anything by rights, but I did what I could along to help my husband."

That was all the testimony offered to show a permanent injury; no physician testified as to her condition, and no other witness was introduced to show that her health was permanently affected. The proof did not warrant a recovery for permanent injury.

Judgment reversed and cause remanded for further proceedings consistent herewith.