# Illinois Central Railroad Company et al. v. Bell Union Coal & Mining Company.

(Decided March 27, 1931.)

W. T. HARRIS and TRABUE, DOOLAN, HELM & HELM for appellants.

F. M. DRAKE and E. R. MORTON for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The appellee, Bell Union Coal & Mining Company, suffered the loss by fire of a large barn and contents during the afternoon of May 17, 1927, and it has recovered a judgment for damages therefor against the appellants, Illinois Central Railroad Company and the Chicago, New Orleans & St. Louis Railroad Company, in the sum of $3,500. The Illinois Central Railroad Company operated its train on a track leased from its coappellant.

The building was 147 feet from the railroad. The fire was discovered "boiling up" through a hole which

had burned through the roof, as if it were through a stovepipe, at a corner of the barn nearest the railroad. It appeared to be dropping onto baled hay stored in the loft, rather than to be coming from it. The mine in connection with the operation of which the barn was used had been closed down for several days and there had been no fire about it during the day. No one had been in the barn since 9 o'clock that morning, although two men had been shoeing mules just outside during the afternoon. The shoes, however, had been prepared elsewhere and no fire was used in that work near the barn. Electric wires were located underneath the sills of the loft and there was none in the loft where the fire appeared to have originated.

An engine and caboose had passed going downgrade a few minutes before the fire was discovered. The wind was blowing in the direction of the barn.

Witnesses for the plaintiff testified that the short train attracted their attention by its unusual noise, described as a puffing with a heavy exhaust. The manager of the coal company, who first discovered the fire and who professed some knowledge as to the operation of railroad locomotives, testified that apparently the engineer would throw in all the steam for a few minutes and then cut it off and coast a little while; then do the same thing over again, running perhaps sixty miles an hour and dropping to twenty miles. When the steam was thus turned on it would cause a "terrific exhaust" through the smokestack and make an artificial draft which would bouy or stir up the fire. Other witnesses described the noise and manner of operation in a similar or more vivid way. One said it was as if the drivers were slipping, and another that it was as if the trainmen were "joy riding." The evidence was that the harder an engine is driven the more exhaust there is and the greater the vacuum, and consequently the more sparks and cinders pass out.

About six weeks or two months before this fire occurred, grass on the railroad right of way and some fencing were discovered to be on fire about thirty minutes after a train had passed. Two months or more before, a witness standing about the same distance from a locomotive as the barn was located had a hole burned in his shirt by a live cinder. He also testified to having felt and seen large cinders at the depot when an engine

was starting up under a full load. But it was not shown that it was the same engine or, indeed, what train or engine was involved in either instance.

For the defendant it was shown that the engine which had passed a short time before the fire was discovered was a large one drawing only a caboose downgrade. Its spark arrester, which conformed to statutory requirements, had been examined a day or two before and also a day or two after this fire, and upon both occasions was found to be in good order. The fire in the engine had not been replenished or disturbed for some time before it passed appellee's property, and the steam had been cut off about five hundred yards before reaching it with just enough carried to "cushion the rods." The enginemen attributed the unusual noise testified to by other witnesses to having been caused by an occasional pounding of the rods due to the coasting of the engine. No sparks were emitted as it passed the barn. That night the engineer, while pulling a heavy load, under which condition sparks are sometimes thrown out, observed there were none. It was further shown that a composition roof such as this barn was covered with is less inflammable and more resistant to fire ignition than wood, and witnesses, who qualified as experts, express the opinion that it was not apt to have been ignited by sparks from an engine passing 150 feet away.

There are two grounds upon which a railroad company's liability for a fire may rest—both of which are relied on in this case. The Statute (section 782) as construed provides that the locomotive must be equipped with the most effectual spark arrester in practical use and kept in good order. If that statute has been complied with, the railroad company cannot be held liable for a fire unless there is proof of negligent operation. Conversely stated, if the company has been negligent (as legally defined) with respect to fire used in the operation of its trains, it is not excused from liability because it has complied with the statute. Hartford Fire Insurance Co. v. C., N. O. & T. P. Ry. Co., 182 Ky. 295, 206 S. W. 628. These two grounds of recovery are considered in Louisville & N. R. v. Rains, 230 Ky. 132, 18 S. W. (2d) 954, and repetition is not necessary.

Within established rules construing the statute and the law of negligence, every case must rest on its particular facts. Railroad companies are not insurers of the

property of others, and in order for one who suffers loss to recover compensation he must sustain the burden of proving negligence or the omission to comply with the statute respecting safety devices tending to prevent or minimize the fire hazard of steam locomotives and that the loss sustained was proximately caused thereby. The making of such proof is not confined to direct evidence, for liability may be established by circumstantial evidence. Chesapeake & O. Ry. Co. v. Snyder, 164 Ky. 432, 175 S. W. 640. Circumstantial evidence is evidence of facts from which it may be reasonably inferred, in cases of this kind, that there was negligence in operation or failure to provide a statutory spark arrester, and in addition that the fire originated as a consequence.

Evidence of fires ignited by engines other than the one claimed to have caused the fire under consideration is admitted upon the theory that it tends to show a negligent habit or custom of the company in not maintaining in proper order its spark arresters or in negligently operating its trains. Louisville & N. Railroad Co. v. Home Insurance Co., 146 Ky. 281, 142 S. W. 398. But this evidence admitted as rebutting the claim that the equipment satisfied the statute and that there was no negligent operation does not alone justify the submission of the case to the jury. Cincinnati, N. O. & T. P. Railway Co. v. Sadieville Milling Co., 137 Ky. 568, 126 S. W. 118. Nor is it sufficient to make out a prima facie case merely to prove that a fire started shortly after the train had passed. Louisville & N. Railroad v. Haggard, 161 Ky. 317, 170 S. W. 956.

It will be observed from the statement of the evidence that it was lacking in proof tending to rebut the positive testimony as to the good condition of the spark arrester, except the starting of the fires. But there was evidence tending to establish negligent operation of the engine as it passed appellee's barn. Add to that the fact that the wind was blowing toward the barn; that a short time before a man standing about the same distance from a passing train had his clothing set on fire by a hot cinder; that practically every other hypothesis was eliminated; that the coincidence of the starting of the fire on the roof of the barn immediately after the engine passed. Although none of the witnesses saw any sparks or hot cinders escaping from the engine (which are difficult to see in daylight), we conclude the circum-

stances were such as to afford a reasonable inference that the loss of appellee's property is attributable to appellant's negligence. And that issue was submitted to the jury which so found. This conclusion finds support in the following authorities: Louisville & N. v. Rains, 230 Ky. 132, 18 S. W. (2d) 954; Louisville & N. v. Feeney, 166 Ky. 699, 179 S. W. 826; Illinois Cent. R. Co. v. Scheible, 162 Ky. 471, 172 S. W. 910; Louisville & N. v. Dalton, 102 Ky. 290, 43 S. W. 431, 19 Ky. Law Rep. 1318; Southern Railway v. Hanna, 53 S. W. 1, 21 Ky. Law Rep. 850; Southern Railway Co. v. McGeoughey, 102 S. W. 270, 31 Ky. Law Rep. 291.

The railroad company relied upon a contract under which it had installed and was maintaining a spur track serving the appellee's mine, in which contract the appellee had in effect agreed to indemnify the railroad company against · damages which might be sustained by reason of fire ignited by its engines. The contract is similar to that construed in John P. Gorman Coal Co. v. L. & N., 213 Ky. 551, 281 S. W. 487, and held to be one of indemnity rather than as a contract against liability for negligence. Assuming the contract relied on to be in its entire applicability one of the same character, it was confined to indemnity against damages sustained by reason of the use of the spur track and did not relate to the operations on the main line, in no way connected with the use of the spur.

The defendants alleged that three certain insurance companies had paid the plaintiff for the part of the loss which it had sustained, and pleaded that they had been subrogated to the rights of the plaintiff, and asked that their pleading be made a cross-petition against the insurance companies as real parties in interest. Process was served on the insurance companies, but it does not appear that they responded. However, a demurrer of the mining company to the pleading was sustained. This issue is discussed in briefs, but it has apparently been overlooked that the insurance companies are not made parties to this appeal, and quite obviously we should not consider it in this opinion.

The judgment is affirmed.