## Illinois Central Railroad Company v. Roark's Administrator.

(Decided March 24, 1933.)

WHEELER, WHEELER & SHELBOURNE for appellant.

BEN S. ADAMS for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

About 1 o'clock a. m. on the morning of the 25th day of March, 1931, a barn and its contents owned by A. L. Roark, McCracken county, Ky., situated on land adjacent to the Illinois Central Railroad Company, was discovered on fire which resulted in its destruction. In his petition to recover of the railroad company the damage sustained by the loss of the barn and contents, Roark merely alleged that it was owned by him and destroyed by fire, without charging negligence on the part of the railroad company. By an amended petition he charged that the barn and contents were destroyed by fire arising from the negligence of the railroad company "in failing to equip and maintain in and upon the smokestacks of its engines, such screens, fenders or smoke arresters as would prevent as far as possible, the escape of fire, sparks or cinders therefrom by reason of the operation of the train." He further alleged that the building was set on fire by sparks falling from the smokestack of the engine onto his barn or onto the right of the way of the railroad company; that it had permitted to grow up and remain on its right of way combustible and inflammable material which caught fire and burned off its right of way onto the property; that

the fire originated by the sparks falling onto the barn and setting it afire or falling onto the right of way and setting fire the inflammable material thereon and spreading to the barn; that the one or the other was true, he did not know which.

The defense of the railroad company was a denial, together with the affirmative allegation that its engines were equipped with proper and sufficient spark arresters, and that the trains were operated in a careful and prudent manner. For reversal it presents two grounds: First "the verdict of the jury is not sustained by sufficient evidence, and is flagrantly against the evidence and contrary to law." Second, the evidence entitled it to a peremptory instruction. A consideration and disposition of these grounds require a review of the evidence.

Between the hours of 11 p. m. and 1 a. m. on the night the barn of Roark was burned, one of the railroad company's freight trains left Paducah at 10:40 p. m. and passed Roark's barn, about 10:55 p. m. Another left Paducah at 12:45 a. m. and passed his barn between 12:45 and 12:50 a. m. The engines attached to these trains were equipped with spark arresters to prevent fire from escaping from the engines through the smokestack. The arresters were steel mesh about three-sixteenths or seven-eighths of an inch, sound and in good condition. They were examined the evening before the barn of Roark was burned. An extreme drouth prevailed in the year 1930, and between August 20 and September 15, 1930, its right of way was mowed and burned off, and on the night of the burning of Roark's barn there was no vegetation on its right of way. In the endeavor to establish his right to a recovery, Roark proved the value of his barn and its contents at the time of its destruction; that the barn was located north of the right of way of the railway company, with a roadway 25 feet wide between the barn and the railroad right of way; at the time the barn was burned, the grass and weeds had been mowed on the right of way of the railroad company but left on the ground; that the roadway was seldom used and was covered by dry vegetation, and, at the time of the burning of the barn, a strong March wind was blowing from the south, directly toward the barn from the railroad's right of way.

Durham, a witness for Roark, testified that he lived about one block from the barn of Roark at the time it was destroyed, and that somewhere around 12 o'clock he was on his back porch for three or four minutes when a freight train passed; the wind was blowing hard, so much so that he "had to get outside the door of his house to shut it, when he looked, saw the train, sparks flying from the engine." The sparks "looked like they were as big as the end of his thumb." They were going directly toward the north side of the barn. After making this observation, he returned to his bed, slept, and knew nothing about the fire until the next morning. On being pressed as to the time he was on his porch, he stated "It was somewhere about midnight, it might have been a little after or a little before * * * I don't remember whether it was before or after 12 o'clock."

Newport, a witness in behalf of Roark, claims that he went to the barn at the time of the fire, and, when he arrived, he observed that the right of way had burned up to the roadway igniting the barn, setting on fire fence posts, which were still burning. At the time of his arrival, the barn was about ready to fall in on the side next to the railroad right of way. The vegetation had burned on the right of way next to his (Roark's) property. The grass and weeds were burned on the right of way and roadway at the time of his arrival at the fire. The wind was blowing just across the railroad toward the barn. The fire burned northwest of the barn 100 yards. This witness claims he put out the fire on the right of way and road, except the fence posts. He claims he heard a train whistle possibly one-half hour or more before he learned of the fire. It was possibly around 12 o'clock at the time he heard it. The testimony of Newport as to the burning of the dry vegetation on the right of way and road, the northwest corner of the barn, and its falling in, before the barn was entirely consumed, was corroborated by that of other witnesses.

Without an elaborate detail of the evidence, this review of it is sufficient to show the circumstances incident to the origin and progress of the fire, as well as plainly to indicate a conflict in the evidence offered in support of the respective theories of the parties.

Accepting the testimony of the witnesses in behalf

of the railroad company, its engines were equipped with spark arresters of the latest and most improved pattern, in common use, properly adjusted, and the train was prudently operated. Also its right of way was absolutely free of any combustible or inflammable material on the night of the fire. The evidence in its behalf completely exonerates it of all liability for the destruction by fire of Roark's barn.

The railroad company is not liable for damage caused by fire originating from its engines, if the spark arresters are of the most modern type in practical use, and the engines are properly equipped with them, and the trains are prudently operated so as not to cause the engines to emit sparks and cinders, and no combustible or inflammable matter is permitted to accumulate or remain on its right of way. It is incumbent upon the owner of property, claimed to have been destroyed by fire produced by the operation of an engine of the railroad company, to allege and prove that its burning was the proximate result of the negligence of the railroad company in equipping the engine or operating its train. Kentucky Central R. Co. v. Barrow, 89 Ky. 638, 20 S. W. 165, 5 Ky. Law Rep. 518, 6 Ky. Law Rep. 240; Cincinnati, N. O. & T. P. R. Co. v. Sadieville Mill. Co., 137 Ky. 568, 126 S. W. 118; Hartford Fire Ins. Co. v. Cincinnati, N. O. & T. P. R. Co., 182 Ky. 295, 206 S. W. 628; Louisville & N. R. Co. v. Deaton, 219 Ky. 715, 294 S. W. 149. On the issue as to whether the locomotive engine set fire to the property, the plaintiff may show that it emitted large sparks, though the spark arrester was most modern in type, in good condition, and properly adjusted, in order to establish that the train was either negligently operated or the spark arrester was defective. Cincinnati, N. O. & T. P. R. Co. v. Caskey, 74 S. W. 201, 24 Ky. Law Rep. 2392; Louisville & N. R. Co. v. Neal, 145 Ky. 42, 139 S. W. 1060; Louisville & N. R. Co. v. Home Insurance Co., 146 Ky. 281, 142 S. W. 398. It is not necessary for the plaintiff to prove that the sparks were seen to leave the engine and fall on the destroyed building. Illinois Central R. Co. v. Stivers, 172 Ky. 322, 189 S. W. 211. The evidence, however, must be sufficient to warrant a conclusion or inference that the fire was caused by sparks from the locomotive as alleged. Big Sandy & Ky. River R. Co. v. Allen, 222 Ky. 527, 1 S. W. (2d) 964. Mere proof that the fire started shortly after the train

had passed is ordinarily not sufficient to make out a prima facie case, (Louisville & N. R. Co. v. Haggard, 161 Ky. 317, 170 S. W. 956; Illinois C. R. Co. v. Bell Union Coal & Mining Co., 238 Ky. 630, 38 S. W. (2d) 707, 709); nor will a verdict supported by a scintilla of evidence be permitted to stand, where there is overwhelming credible evidence to the contrary, or it is clearly against the weight of the evidence. In the present case the evidence is subtantially identical with that presented in Frankfort & C. R. Co. v. Marshall, 236 Ky. 404, 33 S. W. (2d) 353. The material difference in the facts in the Marshall Case and the present one is, in the former, a large number of witnesses testified they saw the train pass just before the fire and that the engine was emitting a large quantity of sparks. For Roark, one witness testified to his observation of the emitting of sparks by the engine and the size thereof.

In Illinois Central R. Co. v. Bell Union Coal & Mining Co., supra, no witness testified as to the observation of the sparks or hot cinders escaping from the engine which passed the property destroyed by fire shortly before it was seen burning. Our observation of the facts appearing in that case was expressed in this language:

"We conclude the circumstances were such as to afford a reasonable inference that the loss of appellee's property is attributable to appellant's negligence. And that issue was submitted to the jury which so found."

Besides the testimony of Durham, wherein he claims he saw the sparks and noted their size as they escaped or were thrown from the passing engine, Newport and others testified that on arriving at the fire they observed that the wind was blowing from the direction of the railroad right of way directly toward Roark's barn, and that the right of way and roadway, between it and the barn had burned off, and the side of the barn next to the railroad right of way was burned and ready to fall; that fence posts were burning between the right of way and the barn at the time of their arrival. Applying the rule stated in the Illinois Cent. R. Co. v. Bell Union Coal & Mining Company, supra, that " 'Circumstantial evidence' in respect to liability of railroad for fire damage is evidence of facts warranting inference of negligence in operation or failure to provide statu-

404

tory spark arrester and in addition that fire originated as consequence." (See Mobile & Ohio R. Co. v. Mathis, 188 Ky. 47, 220 S. W. 1068; Terhune v. Louisville & N. R. Co., 184 Ky. 670, 212 S. W. 915.) Roark was entitled to have the issue submitted to the jury on the testimony of Newport and others, though that of Durham be disregarded. The jury's finding on the evidence is conclusive on an appeal to this court, unless there is overwhelming credible evidence to the contrary, or it is clearly against the weight of the evidence. Iseman v. Hayes, 242 Ky. 302, 46 S. W. (2d) 110. A co-ordinate rule is that this court, where the evidence is sufficient to support the verdict, will not interrupt it unless some error appears in the record showing the losing party has been deprived of a fair trial. Keyser v. Damron, 159 Ky. 444, 167 S. W. 381; Price Brothers v. City of Dawson Springs, 190 Ky. 349, 227 S. W. 470; Johnson v. Taylor, 245 Ky. 247, 53 S. W. (2d) 550, and cases cited.

Carefully and diligently considering the evidence in the light of our opinions in like cases, it is our view that the verdict of the jury is supported by sufficient evidence and that it is not flagrantly against the weight thereof. The motion for a peremptory instruction was properly overruled.

No ground of reversal appearing in the record, the judgment is affirmed.