## Clemons v. Dawkins Log & Mill Co.

(Decided Nov. 13, 1936.)

CHESTER A. BACH for appellant.

GRANNIS BACH and WILLIAMS & ALLEN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

During and prior to the month of April, 1930, the

appellant and plaintiff below, J. D. Clemons, owned a tract of land in Breathitt county, Ky., containing about 425 acres and located on one of the tributaries of Upper Quicksand creek. It was mostly primtive forest with but little cleared land on it. Some time during the month of April of that year, and when plaintiff was residing in the state of Indiana, a forest fire originating from some unproven source spread over his land, or a portion of it, and burned a number of panels of rail fencing, injuring or destroying some young timber, and producing some other minor losses. Three years and ten months thereafter (February 22, 1934) he filed this action in the Breathitt circuit court against the appellee and defendant below, Dawkins Log & Mill Company, whereby he sought recovery against it of the sum of $4,100 as alleged damage to his land by the fire referred to and which was charged in the petition to have been negligently started by defendant through and by the imperfect equipment of its railroad engine, or by the mismanagement of it by its operators, or by the negligent accumulation of combustible material upon its right of way; it having theretofore constructed and operated a logging railway from its sawmilling plant in Royalton, Magoffin county, Ky., into Breathitt county, which at one point was as near as 1½ or 2 miles from the land of plaintiff. It was charged that somewhere about that nearest point to plaintiff's premises, the fire that destroyed his property was alleged to have been started by defendant in the operation of its engine on its logging railroad.

The answer denied the averments of the petition, and after issues were formed a trial thereof resulted in the court sustaining defendant's motion for a peremptory instruction at the close of all of the evidence, followed by a judgment dismissing the petition based upon the verdict so directed. Plaintiff's motion for a new trial was overruled, and the sole question presented and argued by counsel for both sides is the propriety of the court's action in directing the verdict complained of.

The action is, of course, based upon the alleged noncompliance by defendant with the requirements of section 782 of our present Kentucky Statutes, and section 466 of the same Statutes giving a cause of action for such violation. The alleged negligent act of permitting combustible material to accumulate on defendant's right

of way was abandoned at the trial, leaving only the two issues of imperfect equipment of defendant's locomotive pulling its logging train, and improper operation of it by defendant's servants in charge thereof. It is therefore clear that in order to make a submittable case on the issue of neglect of the defendant, one of two facts was required to be established, or at any rate proven to such an extent as required a submission of them to the jury, and which were: (a) That defendant's locomotive at the time complained of was improperly equipped for arresting the escape of unnecessary sparks therefrom, or (b) that although it was properly equipped it was negligently managed and operated so as to cause or produce the fire upon or adjacent to its right of way. In addition thereto, it was encumbent upon plaintiff to also prove (c) that such negligently started fire finally reached his premises some 1½ or 2 miles distant and burned it over, with the alleged damaging result.

The court determined, and we think correctly so, that there was a failure of testimony to authorize the submission to the jury of either of those essential facts. The law with reference to this character of action, and the proof necessary to authorize a recovery, is stated in many cases cited in the notes to section 782, supra, of our Statutes, and a comparatively late one in which it was also done, and in which many prior ones are cited, is Illinois Central Railroad Company v. Bell Union Coal & Mining Company, 238 Ky. 630, 38 S. W. (2d) 707. It is needless in this opinion to insert excerpts from our prior ones upon the points involved, since the ground for our ruling, as well as the rulings themselves, may be obtained by consulting those opinions. It is sufficient to say that all of them adhere to these essentials—that there must be some probative testimony showing defective equipment or improper operation, and that the mere fact of a fire, even though produced by sparks from an engine, is not in itself sufficient to create a presumption of negligence. Also, that a railroad company is compelled to use fire in the production of steam by which its trains may be moved, and that the best scientifically equipped one cannot prevent the escape of some sparks in the use of that necessary element. Therefore, it is incumbent on defendant by some sort of probative testimony to show that the sparks emanating from the engine were of such size and of such frequency and constancy

as to create the reasonable presumption that it was the result of improper equipment, or improper operation of proper equipment.

A wandering witness, who at that time seems to have been hiding out from civilization in order to escape arrest, testified that he and a companion some time in the month of April, 1930 (according to his best recollection), were traveling along defendant's track near the mouth of Lovejoy creek, which was the nearest point to plaintiff's farm that defendant's track ran, and that as they approached the track from the adjoining forest and woodland for the purpose of getting upon it, one of defendant's trains passed. His companion was Chester Lovely, and this is witness' testimony: "We heard the train coming, Chester said—'Let's step out of the way and let her pass,' we stepped across the branch and as the train passed fire came out from underneath her and caught some trash. I stamped at the fire and tried to put it out and he said 'Let it go, it won't interfere with us any,' I said, 'It won't hurt Dad's fence,' and we went on to the water tank and the fire was burning again and that is all we saw." He stated that later on he saw a fire off the railroad track, but to what extent he did not state, nor did he know what became of it. Perhaps he, and certainly one or two other witnesses, testified to having seen sparks from defendant's engines on other occasions followed by fires on the track or on the adjacent right of way, and some of them said that the escaped cinders were perhaps as large as "the end of your finger," but no fires were shown to have started or spread therefrom, nor did any of the witnesses pretend to know or testify to the size of an escaping spark or cinder that would exceed a permissible one in proper and necessary operation of a locomotive engine. It was also shown that some fire that burned over plaintiff's land extended from his farm to the railroad track, but whether that was the fire testified to by the wandering witness, or any other one that was started by cinders from defendant's locomotive, is nowhere attempted to be shown except by mere surmise.

On the other hand, it is undisputably proven that during that same month "Cathead" Oliver, who owned land nearer to plaintiff's farm than was located defendant's track at the nearest point, cleared some new ground, and in burning brush, or for other purposes,

fires that he started spread from his premises and reached the land of plaintiff, as well as spreading in other directions, producing what the witnesses described as a more or less forest fire. In fact, the proof shows that during that period (which may or may not be universally true at other times so far as we know) there were promiscuous fires in that vicinity in various directions from plaintiff's land, the origin of which, as to some of them, was unknown. Some of them spread to defendant's right of way and track, but there was no testimony to show that the fire started at any of such touching points adjacent to or upon its right of way and traveled from it, or whether the fire originated elsewhere and traveled to that point: It was furthermore shown, without dispute by either direct or circumstantial testimony, that defendant's locomotive at the time was equipped with the latest improved spark arrester, and that the operation of the train was not negligent.

Under the rulings announced in our former opinions, in like cases, as well as in other classes of tort actions, the testimony in this case went no farther than to create a suspicion or surmise that the destructive fire of which plaintiff complains possibly might have been produced by sparks from defendant's locomotive; but which, in all of our cases, we have held was insufficient to sustain a cause of action based on negligence. If, however, it had been shown by sufficient probative testimony that the fire complained of was actually started by sparks from defendant's locomotive, it was then encumbent upon plaintiff to show that their escaping was the result of some negligence of defendant. He offered no testimony upon that issue, save and except that to which we have referred concerning the supposed size of sparks on other occasions and the one at which the fire is supposed to have originated.

In addition to the insufficiency of the testimony which we have reviewed, another fact has not escaped us, and which is, that plaintiff delayed filing this action for three years and ten months from the date of his loss. He, of course, had the right to postpone seeking legal redress to any period within which he might do so (five years), but we cannot escape the inference that his tardiness in doing so was most likely the result of his lack of faith in the merits of his cause. A late case in which other prior ones are referred to sustaining the

principles hereinbefore stated is City of Ashland v. Burley, 265 Ky. 176, 96 S. W. (2d) 581. A further extension of the opinion is deemed unnecessary.

Wherefore, for the reasons stated, the judgment is affirmed.