## Louisville & N. R. Co. v. Bean.

### Same v. Hord.

(Decided May 6, 1938.)

ASHBY M. WARREN, O. R. BRIGHT, J. P. HAMILTON and J. MILLER WHITE for appellant.

J. M. COLLINS, SR., and ANDREW V. FOX for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

On June 19, 1936, a barn and its contents located on the farm of appellee W. H. Hord in Mason county, Ky., were destroyed by fire. Hord was the owner of the barn and his coappellee, L. C. Bean, was the owner of the personal property, except some tobacco sticks which belonged to Hord.

Appellees, plaintiffs below, brought their separate actions in the Mason circuit court against appellant for the recovery of their respective property. The two actions were consolidated and tried together by the same jury and resulted in a verdict and judgment thereon in favor of Bean for $628 and in favor of Hord for $750 and to reverse those judgments defendant has prosecuted this appeal. The cases having been consolidated on appeal, both will be disposed of in one opinion. We will refer to the parties as plaintiffs and defendant according to their respective positions in the lower court.

Plaintiffs alleged that the defendant, its employees and agents who were operating its train while passing over its tracks in Mason county, Ky., nearest to the

premises occupied by the barn and its contents, on the farm of plaintiff Hord, between 11 and 12 o'clock a. m., and going in a northerly direction, negligently and carelessly caused to be emitted and thrown from the engine of said train sparks in such size and volume as to set on fire and burn the barn and its contents; that defendant, its agents and employees in charge of and operating said train were negligent in not providing said locomotive with spark arresters which were the best and most effective arresters known to science and in practical use and properly adjusted that would prevent, as far as possible, sparks and cinders from escaping from the chimney or smoke stack of said train; and carelessly and negligently handled and operated said train so as to cause sparks of fire and hot cinders to be emitted and escape therefrom which ignited and set on fire and destroyed plaintiffs' property

Defendant filed its answer traversing the allegations of the petition, and later by amended answer, in bar of plaintiffs' right of recovery, it alleged that when the barn and contents were destroyed by fire defendant's engine, No. 856, was carrying its cargo northwardly in a light train, and that the engine was equipped at the time with the best and most effectual spark arrester in practical use and was in good condition; that the distance between the barn and defendant's railroad tracks upon which its engine was moving was 377 feet; and that it was physically impossible for cinders from its engine to travel that distance and still be of sufficient heat to set on fire or to ignite the barn or any particles of material in or near the barn.

Two grounds are relied on by defendant for a reversal of the judgments, (a) that the evidence was insufficient to take the case to the jury, and the court erred in failing to sustain its motion to direct the jury to return a verdict in its favor; and (b) the court erred in the instructions given to the jury.

According to the evidence of L. C. Bean and his sixteen year old son, Lawrence Bean, on the morning preceding the fire that occurred about noon, they hauled water across the railroad from Mill creek and watered some tobacco beds, including one near the west end of the barn, and about 15 feet from it and extending 60 feet toward the railroad. After watering the tobacco beds, they went down in the bottom and plowed corn

until near noon and took the horses to the barn and fed them. They entered the east end of the barn but went around to the west end, the location of the tobacco bed; they saw no fire about the barn and left no one there; just before they put the horses in the barn or about that time they heard a train whistle about the Mill creek crossing, which was south of the barn. The train was proceeding north in the direction of the barn, but they did not remember having seen the train pass as there were so many trains passing they paid no attention to it. They then went to the house to dinner and after they had been there fifteen or twenty minutes they saw smoke in the direction of the barn and then learned that the barn was on fire. When they arrived at the barn, the west end of it had fallen in. The front part of the barn was covered with fodder and tobacco stalks and some hay in the east end of the barn and some old tobacco in the west end. Mr. Bean made measurements from the barn to the railroad track in the direction in which the wind was blowing, and according to his measurement the distance was 312 feet. However, he further said that the nearest distance from the west end of the tobacco bed to the railroad was 212 feet.

Another witness in the vicinity testified to having heard the train whistle some distance from the barn and that it was "pulling hard," but later on cross-examination he said he could not say it was pulling hard when it passed the barn. There was a rise in the grade of the track near opposite the barn, and according to the evidence of the engineer he "lowered the engine" and opened the throttle, as it was customary to do when taking a grade. Also, the fireman testified that he put fresh coal in the fire box a short distance south of the grade and the premises in question. The evidence also tends to show there were tobacco stalks and other like combustible matter around the barn which had burned off considerable distance south and southeast of the barn in the direction in which the wind was blowing, but had burned only a short distance north or northwest of the barn. The tobacco bed near the barn was covered with cotton which was burned and indications were that it had burned in a southeasternly direction toward the barn, indicating, according to plaintiffs' evidence, that the fire might have started in the cotton covering of the tobacco bed and was propelled by the current of the wind toward the barn and

set fire to other combustible material near the barn and finally reached the barn at or about the west end of it. It is also in evidence that about that time other fires were set out from trains along lands adjoining the grade south of the premises in question, but there is no evidence to show that these other fires originated from the locomotive, No. 856, now in question, or other details as to how they originated.

It will be seen from the resumé of the evidence that there is no direct proof that the fire originated from appellant's train. No one testified to having seen any sparks or embers emanating from the engine, or that any embers were found near or about the premises or barn or between the barn and the railroad track. Plaintiffs rest their case upon the circumstances outlined above, and insist that this circumstantial evidence is sufficient to take the case to the jury and to sustain the verdict.

It was shown by the evidence for the defendant that engine No. 856, including the spark arrester and other parts, was inspected at Lexington, Ky., June 18th, the day preceding the fire, and that it was in perfect condition, and also another inspection made on June 22d, three days after the fire, showed that the engine, including the spark arrester, was still in perfect condition as was found on June 18th, the day before the fire. It was shown by the conductor in charge of the train on June 19th, that it consisted of 8 cars, the engine having a capacity of 800 tons, but at the time in question its cargo consisted of only 464 tons. The conductor said that the grade near opposite the barn was not a heavy one and caused no trouble except in case of a stop and it was very seldom that you would notice the grade with a train of 8 cars and did not require heavy pulling or any unusual exertion of the engine. There was exhibited photographs of the engine, including the spark arrester, and also a piece of wire netting, spark arrester, similar to the one used on engine No. 856 on the occasion of the fire, the mesh of it being 3/16 of an inch, which was exhibited to the jury and is filed with the record. According to the evidence of experienced railroad men and other experts on the subject, they had never seen or known of a spark carrying off railroad property more than 30 feet from the track and it was impossible for a cinder or spark to stay alive for any considerable distance and that there was abso-

lutely no chance of an engine of the type of the one in question to set fire off the right of way over 50 feet distance. It was also shown by the evidence of defendant's witnesses, who claim that they made an accurate measure of the distance between the barn and the railroad track, that it was 460 feet from the railroad to the northwest corner of the barn, and the nearest point between the barn and the railroad was 377 feet. It is seen that there is considerable difference between the parties as to the actual distance between the two points. Defendant's witnesses said that they measured the distance with a tape and was drawn to scale, while the measurements made by plaintiffs were not drawn to scale.

J. A. Hennessey testified that he had 20 years' experience as fireman and engineer and had seen no fires set out by sparks from locomotives except along fences of railroads and in most cases sparks are usually out when they hit the ground.

Kirby Moore, an engineer of 35 years' experience, said engines operated by him had set fires, but none farther than 40 feet from the track and he never had seen a fire set out by sparks 300 feet from the railroad track.

C. E. Preston, of 20 years' experience in railroad service, said that it was the duty of a freight brakeman at that time to ride on top of the car when hand brakes were in use; on pulling heavy grades there were lots of sparks that would come out of the engine, but those sparks would not go over 50 feet above the smokestack until they would go out, and if they fall on a person they would not burn his clothes and you could catch them in your hands as they came down and they would not burn you; that in his 20 years' experience he had not seen a fire started by sparks from an engine farther away than 40 or 50 feet from the railroad track.

Prof. Gilbert A. Young, head of the school of Mechanical Engineering of Pardue University, testified that he had been connected with the University for 43 years and had been in railroad work for 40 years. He described the mechanism and workings of an engine front, including sparks, arresters, etc., and said he had made investigations and inspections of fire plates or sparks coming from the engine, relative to the distance they travel and have sufficient heat to start a fire. He

described in detail the tests he had made and said the results showed that 75 per cent. of the cinders emanating from locomotives through spark arresters fall within 50 feet of the center of the track and some of them would have sufficient heat to start a fire after going that distance. He said that cinders 3/16 of an inch in size, according to his experiments, might start a fire within a distance of about 40 feet. He was asked:

"Q. To direct a cinder through a 3/16 inch screen two or three hundred feet would it retain heat enough to set out a fire? A. Absolutely not.

"Q. Then in your opinion: you have heard the testimony in this case, this barn was over three hundred feet; in your opinion, this engine wouldn't start fire to this barn? A. No, Sir.

By the Court: What do you base your opinion on? A. My experience and about 8,000 tests; 40 volumes."

There were other witnesses who testified for defendant whose evidence tends to show that the locomotive of the train and spark arrester were in good condition and was that of the best and latest type in use. According to the evidence for defendant, which is uncontradicted, there was no negligence shown in the equipment of the train or its operation, unless negligence be inferred or presumed from the circumstances as related by the plaintiffs and their witnesses.

It is insisted for defendant that all plaintiffs' evidence tends to show is that soon after the train passed the fire was discovered in the barn, and the other minor circumstances are speculative and of such minor importance as not to consist of any probative value as evidence. And, it is further insisted that even though it be conceded that the fire originated from the train, that alone will not fix any liability on defendant, in the absence of proof of improper equipment of the train or improper operation of proper equipment.

Section 782 of the Kentucky Statutes as construed provides that the locomotives of trains must be equipped with the most effectual spark arresters in practical use and kept in good order. It is shown by the undisputed evidence for defendant that it had complied with the statute. The spark arrester was in perfect condition on the day before the fire and found to

be in the same condition on its next inspection, 3 days after the fire, which necessarily means that it was in proper condition between the dates of inspection, which included the day the fire occurred.

In Illinois Central Railroad Company et al. v. Bell Union Coal & Mining Company, 238 Ky. 630, 38 S. W. (2d) 707, 708, we said:

"There are two grounds upon which a railroad company's liability for a fire may rest—both of which are relied on in this case. The Statute (section 782) as construed provides that the locomotive must be equipped with the most effectual spark arrester in practical use and kept in good order. If that statute has been complied with, the railroad company cannot be held liable for a fire unless there is proof of negligent operation. Conversely stated, if the company has been negligent (as legally defined) with respect to fire used in the operation of its trains, it is not excused from liability because it has complied with the statute. Hartford Fire Insurance Company v. C., N. O. & T. P. Railway Company, 182 Ky. 295, 206 S. W. 628. These two grounds of recovery are considered in Louisville & Nashville Railroad Company v. Rains, 230 Ky. 132, 18 S. W. (2d) 954, and repetition is not necessary.

"Within established rules construing the statute and the law of negligence, every case must rest on its particular facts. Railroad companies are not insurers of the property of others, and in order for one who suffers loss to recover compensation he must sustain the burden of proving negligence or the omission to comply with the statute respecting safety devices tending to prevent or minimize the fire hazard of steam locomotives and that the loss sustained was proximately caused thereby. The making of such proof is not confined to direct evidence, for liability may be established by circumstantial evidence. Chesapeake & Ohio Railroad Company v. Snyder, 164 Ky. 432, 175 S. W. 640. Circumstantial evidence is evidence of facts from which it may be reasonably inferred, in cases of this kind, that there was negligence in operation or failure to provide a statutory spark arrester, and in addition that the fire originated as a consequence."

However, the railroad company was held liable in that case for the negligent handling and operation of its train, notwithstanding the evidence showing a compliance with the statute. That opinion discloses an unusual method in the operation of the engine while it was near or opposite the barn involved in that case. No such facts appear in the present case. The evidence shows that there was a slight grade near the barn and the engine was operated in the usual manner. There is evidence that the fireman had put coal in the fire box some distance south of the grade and that the engineer "lowered the engine" or opened the throttle to ascend the grade, but there is no evidence of an unusual method of handling the engine or operating the train, as was disclosed in the case supra.

There was evidence that other fires had been started in that vicinity from trains, but it is not disclosed that the particular train in question started any of those fires. In the Illinois Central Railroad Company Case, supra, it is pointed out that evidence of fires ignited by engines other than the one claimed to have caused the fire involved is admitted upon the theory that it tends to show a negligent habit or custom of the company in not maintaining in proper order its spark arresters or in negligently operating its trains. But in that connection it is further said:

"But this evidence admitted as rebutting the claim that the equipment satisfied the statute and that there was no negligent operation does not alone justify the submission of the case to the jury. Cincinnati, N. O. & T. P. Railway Company v. Sadieville Milling Company, 137 Ky. 568, 126 S. W. 118. Nor is it sufficient to make out a prima facie case merely to prove that a fire started shortly after the train had passed. Louisville & Nashville Railroad v. Haggard, 161 Ky. 317, 170 S. W. 956."

Also, in the case of Clemons v. Dawkins Log & Mill Company, 266 Ky. 157, 98 S. W. (2d) 472, 473, a similar question was involved. That action was based upon the alleged noncompliance by defendant with the requirements of section 782 of the Kentucky Statutes and negligent operation of the train and upon such issues the rule is thus stated:

"It is therefore clear that in order to make a

submittable case on the issue of neglect of the defendant, one of two facts was required to be established, or at any rate proven to such an extent as required a submission of them to the jury, and which were: (a) That defendant's locomotive at the time complained of was improperly equipped for arresting the escape of unnecessary sparks therefrom, or (b) that although it was properly equipped it was negligently managed and operated so as to cause or produce the fire upon or adjacent to its right of way. In addition thereto, it was encumbent upon plaintiff to also prove (c) that such negligently started fire finally reached his premises some 1½ or 2 miles distant and burned it over, with the alleged damaging result. * * *

"The law with reference to this character of action, and the proof necessary to authorize a recovery, is stated in many cases cited in the notes to section 782, supra, of our Statutes, and a comparatively late one in which it was also done, and in which many prior ones are cited, is Illinois Central Railroad Company v. Bell Union Coal & Mining Company, 238 Ky. 630, 38 S. W. (2d) 707. It is needless in this opinion to insert excerpts from our prior ones upon the points involved, since the ground for our ruling, as well as the rulings themselves, may be obtained by consulting those opinions. It is sufficient to say that all of them adhere to these essentials—that there must be some probative testimony showing defective equipment or improper operation, and that the mere fact of a fire, even though produced by sparks from an engine, is not in itself sufficient to create a presumption of negligence. Also, that a railroad company is compelled to use fire in the production of steam by which its trains may be moved, and that the best scientifically equipped one cannot prevent the escape of some sparks in the use of that necessary element. Therefore, it is incumbent on defendant, (plaintiff) by some sort of probative testimony to show that the sparks emanating from the engine were of such size and of such frequency and constancy as to create the reasonable presumption that it was the result of improper equipment, or improper operation of proper equipment."

It is our view that the facts in the present case

bring it squarely within the category of the cases supra. The evidence for the defendant shows a compliance with section 782 of the Statutes, and plaintiff failed to establish negligent operation of the train. Under these well-established rules, the conclusion is inescapable that plaintiffs failed to produce proof sufficient to take the case to the jury and the court erred in failing to sustain defendant's motion for a directed verdict in its favor.

Plaintiffs rely upon the cases of Illinois Central Railway Company v. Scheible, 162 Ky. 469, 172 S. W. 910, Louisville & Nashville Railroad Company v. Feeney, 166 Ky. 699, 179 S. W. 826, and various other cases of similar facts and holdings. In the Scheible and Feeney Cases, supra, which are more particularly stressed and relied on, it is definitely pointed out in those opinions that the particular engine or engines in-. volved, as well as other engines, had within a short time prior or subsequent to the fire involved set out or started other fires on land or premises abutting the right of way. As we have already stated, there is no evidence in the case at bar to the effect that the particular engine involved had set out or started other fires; and, as pointed out in Illinois Central Railroad Company Case, supra, evidence that engines other than the one involved in the particular case had set out or started other fires does not alone justify the submission of the case to the jury when it is shown by the undisputed evidence that the Statute had been complied with. An analysis of the authorities relied on in support of our conclusion and the ones relied on by plaintiffs disclose that they do not conflict, when viewed in the light of the facts and issues as developed in those cases.

Since we have concluded that plaintiffs failed to make out a submittable case for the reasons stated, it becomes unnecessary for us to discuss or determine other questions raised, all of which are reserved.

For reasons stated, the judgment in both cases is reversed and remanded for proceedings consistent with this opinion.