## Withers et al. v. Illinois Cent. R. Co.

October 21, 1947.

Rehearing denied January 23, 1948.

A. J. Bratcher, Judge.

C. A. Denny for appellants.

T. E. Sandidge and Alfred C. Ross for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Reversing.

Appellant and others of her family, who owned a farm in Muhlenberg County, sought to recover of defendant (appellee) the value of a field of lespedeza and one haystack destroyed by fire on January 31, 1944. It was alleged that defendant's railroad tracks passed through the farm, and that around 2:00 p. m. one of defendant's trains was going northwardly, and sparks from the engine were thrown on the 16 acre field resulting in the burning of the field of hay and one stack. The destruction was alleged to have been due to negligence of defendant in failing to equip its locomotive with a safe spark arrester or in failing to operate its train in a careful manner. Issue was joined by defendant's answer, which denied generally all material allegations of the petition.

At the close of plaintiff's proof the court sustained defendant's motion for a peremptory instruction, the jury returning a verdict accordingly; the only question presented is whether or not the court was in error in directing the verdict.

We gather from the evidence that defendant's tracks run north and south, parallel with Highway No. 62, which lies between the tracks and the burned field.

The proof shows that the fire started on the east side of the highway in a corner of the field, about 125 feet from the railroad tracks. A rather high wind was blowing eastwardly, that is, from the railroad tracks toward the premises of plaintiffs. Mrs. Withers testified that she was in the house, located not far from where the fire is said to have started, at about two o'clock when she heard a train pass; shortly thereafter she went to the coalhouse for coal, and as she "turned around the whole field was afire." She said the grade was heavy at the point where the train passed the house, and the engines pulled heavy; she said she had seen sparks from the engines "lots of times," and had seen them "set the railroad afire." She said the fire started in the field next to the much traveled highway.

A son who was not at home when the train passed, got there a few minutes after three o'clock; the fire was smoldering. He was of the opinion that the fire started at a point where he found some fresh cinders, which were produced and filed as exhibits. He stated that time after time he had seen sparks fly from the locomotive smoke stacks.

George Johnson, who lived on an adjoining farm, said he was at home on the day of the fire and saw the train pass; it was a freight train, going upgrade "pulling and snorting like it was a loaded train." The day was dry, the wind very high and blowing from the direction of the railroad. He came out of his house and saw the train passing "there," and as he turned around the fire "flew up," just about the time the caboose was passing the property; Johnson later went to the point where he said the fire started and found cinders "that evidently came out of the locomotive." He said when he first noticed the fire, nobody was around and there was nothing between him and the fire.

Appellee in brief, insisting that the court correctly directed a favorable verdict, contends that no witness testified that cinders were seen coming from the engine, or to any fact showing that the train was being negligently operated. Counsel relies upon and quotes from several cases, the excerpts standing alone seemingly indicating that such direct proof is necessary to saddle the railroad with negligence.

In the many cases of this character noted, the testimony varies to such an extent that no one may be selected as controlling. But a casual examination, even of the cases from which excerpts are quoted, will show that the rule is not as strong as counsel states it. Counsel rested his case somewhat on Louisville & N. R. Co. v. Bean, 273 Ky. 454, 115 S. W. 2d 989, or quotations therefrom. Counsel insists that in order to make what they call a "prima facie case" one of two facts must be established: (1) That defendant's locomotive was, at the time complained of, improperly equipped for the arresting of unnecessary sparks, or that although properly equipped, it was negligently operated so as to cause the fire on property adjacent to its right of way.

It is true that a reading of that case and others cited would justify the conclusion above stated; in that case and others it was said that it was incumbent on plaintiff by "some form of probative" evidence to show the sparks from the engine were of such frequency and size and constancy as to create a reasonable presumption that the fire was the result of improper equipment or improper management. We commented that a resume of the proof failed to show that any one testified to having seen sparks from the engine. or that any embers were found near the premises or burned barn. We held the proof there to have been insufficient to uphold a verdict, but the facts here are quite different from the facts in that case, which cites several cases relied on by appellee, among them Clemons v. Dawkins Log & Mill Co., 266 Ky. 157, 98 S. W. 2d 472, and Illinois Cent. R. Co. v. Roark's Adm'r, 248 Ky. 398, 58 S. W. 2d 648, all of which, if excerpts are picked out, would seem to indicate on casual reading, that it is incumbent on the plaintiff to prove that some one saw the sparks which started the fire flying from the engine, or some positive and direct fact which showed improper management which in many cases would be an impossibility. Illinois Cent. R. Co. v. Schieble, 162 Ky. 469, 172 S. W. 910.

In the Roark case, supra, the evidence was strikingly similar to that adduced in the instant case, except in one particular; one witness saw the sparks flying from the smokestack of the engine as it passed his home about one block away from the burned premises. In that case

there was proof as to the efficient character of the ar resters, but we held the rebutting proof sufficient to uphold a verdict.

The writer of that opinion took the trouble to review a number of cases involving the liability or non-liability of a railroad company for losses by fire alleged to have been caused by the operation of its trains, and from these it may be gathered that the company is not liable for damages caused by fire originating from its engines, if the spark arresters are of the most modern type in practical use, and the engines are properly equipped with such arresters, and the trains or engines are carefully operated so as not to allow sparks to emit from the engine in such quantities as to cause the damage. We said in the opinion that it was incumbent on the owner of property claimed to have been destroyed by such fires to allege and prove that the burning was the proximate result of the negligence of the railroad company in failing to equip its engines properly, or in the operation of its trains. That on the issue as to whether the locomotive set fire to the property, the plaintiff may show that the engine emitted large sparks, though the spark arrester was of proper type and properly adjusted and in good condition, in order to show that the spark arrester was defective, or there was negligent operation (cases cited). After laying down these rules, the soundness of which cannot be disputed, we held that it was not necessary for the plaintiff to prove that sparks were seen to emit from the engine and fall on the property. Illinois Cent. R. Co. v. Stivers, 172 Ky. 322, 189 S. W. 211. The evidence must be sufficient, however, to warrant a conclusion or inference that the fire was caused by sparks from the locomotive. Big Sandy & K. R. R. Co. v. Allen, 222 Ky. 527, 1 S. W. 2d 964. The opinion also cites Illinois Cent. R. Co. v. Bell Union Coal & Mining Co., 238 Ky. 630, 38 S. W. 2d 707, 708, in which we held, that circumstantial evidence, if of probative character, was sufficient to prove negligence; such, we said, "is evidence of facts from which it may be reasonably inferred, in cases of this kind, that there was negligence in operation or failure to provide a statutory spark arrester, and in addition that the fire originated as a consequence." In that case there was no showing of flying cinders at the time of

the fire, or at any other time; the proof, purely circumstantial, went mainly to show improper operation. We cited Chesapeake & O. R. Co. v. Snyder, 164 Ky. 432, 175 S. W. 640, as authority that negligence may be shown by circumstantial evidence.

In the Scheible case, supra, where there was no direct evidence of sparks from the engine which passed a few moments before the fire was discovered, we said that "direct evidence is not indispensible to a recovery in this class of cases. Circumstantial evidence is equally as sufficient as direct evidence would be when the circumstantial evidence connects the sparks from the passing train with the fire." (162 Ky. 469, 172 S. W. 910.) We pointed out the difficulty or impossibility of proving by positive evidence that the engine was emitting sparks, particularly in daytime.

Applying the principles enunciated in many of the cited cases, we have no difficulty in reaching the conclusion that there was sufficient circumstantial evidence, of probative value, to take the case to the jury. The proof justifies a much more reasonable inference that the fire was started from sparks from the engine than, as suggested by appellee, that since the burned field was much nearer the highway than the railroad tracks, "it is more reasonable and natural to presume that someone flipped a lighted cigarette or cigar from a passing automobile," and started the fire.

We are of the opinion that the court was in error in directing verdict for defendant, so the judgment is reversed for a new trial and proceedings consistent herewith.